UNITED STATES FIDELITY AND GUARANTY COMPANY *vs.*
HANOVER INSURANCE COMPANY.

Hampden. March 7, 1994. - May 3, 1994.

Present: LIACOS, C.J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Insurance,* Motor vehicle insurance, Coverage, Construction of policy, Contribution among insurers. *Contract,* Insurance.

Discussion of cases involving conflicts between "other insurance" clauses in liability insurance policies [653-654], and specifically, conflicts between an "excess" clause and a "super-escape" clause [654-655].

In an action brought by one automobile liability insurer against another to determine liability under their respective policies of insurance to pay a certain claim, this court held that a "super-escape" clause in one policy providing coverage only if "no other valid and collectible automobile liability insurance, either primary or excess, . . . is available," rendered the other policy with a conflicting "excess" clause (providing no payments until the other applicable policy paid its limits) the primary and sole insurance coverage for the loss. [655-657]

There was no ambiguity or other interpretation of the express terms of two insurance policies that would require treating a certain "super-escape" clause in one policy as a basic escape clause so as to relieve one of the insurers of liability under the terms of the contracts [657-659]; nor was there any violation of public policy shown in giving effect to the "super-escape" clause so that it had preference over an "excess" clause in the other policy [659-660].

CIVIL ACTION commenced in the Superior Court Department on August 20, 1991.

The case was heard by *John F. Moriarty,* J., on motions for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Donald W. Goodrich* for the plaintiff.
*Patricia A. Zak* for the defendant.

GREANEY, J. We granted an application for direct appellate review in this case to decide the responsibility between two insurers, the plaintiff, United States Fidelity and Guaranty Company (USF&G),. and the defendant, Hanover Insurance Company (Hanover), to pay personal injury damages in the amount of $100,000, when their respective insurance policies contain limiting clauses which each insurer claims makes the other solely responsible for the entire $100,000. A judge of the Superior Court, who had before him a statement of agreed facts and exhibits and cross motions for summary judgment, decided that the limiting clauses in the two insurance policies were mutually repugnant, and, as a result, USF&G and Hanover were required to prorate the damages. We conclude that USF&G is responsible for the entire loss. Accordingly, we vacate the judgment and direct the entry of a new judgment declaring that responsibility.

The record discloses the following. On October 5, 1988, Brian D. Mulvagh decided to test drive a motor vehicle owned by Springfield Auto Sales-East, Inc. While Mulvagh was driving in Chicopee, he lost control of the vehicle and struck a telephone pole. A passenger in the vehicle was seriously injured. Mulvagh's liability for the accident was "reasonably clear."

Springfield Auto Sales-East, Inc., had a so-called "garage policy" with Hanover. The maximum amount of optional bodily injury coverage available- under the policy was $100,000. In its policy, Hanover imposed limitations on Coverage B (optional bodily injury), "in consideration of [a] reduced rate of premium." Under its "Limited Customer Coverage," Hanover agreed to provide coverage only if "no other valid and collectible automobile liability insurance, either primary or excess, with limits of liability at least equal to . . . the limits required by the Massachusetts Compulsory Automobile Liability Security Act . . . is available."[1]

---

[1] In October, 1988, G. L. c. 90, § 34A, required limits of $10,000/$20,000 for bodily injury coverage.

Mulvagh was married to, and lived in the same household as, Louise E. Mulvagh. She owned a 1987 Buick Century automobile which was insured by USF&G under a Massachusetts automobile insurance policy. The parties have stipulated that Mulvagh was an insured under this policy. Part 5 (the provision for optional bodily injuries to others, which also provided a maximum of $100,000 in coverage) of Mrs. Mulvagh's USF&G policy provided, "[i]f someone covered under this Part is using an auto he or she does not own at the time of the accident, the owner's auto insurance must pay its limits before we pay."

Mulvagh's passenger gave a notice of claim to both USF&G and Hanover. The "full and fair compromised value" of the claim was $100,000. Hanover concluded that "other insurance" was available under the USF&G policy to cover Mulvagh's liability. Based on its limiting clause, Hanover refused to pay. For its part, USF&G concluded that Hanover was responsible for covering Mulvagh's liability. After reserving its rights against Hanover, however, USF&G paid the passenger its policy limits of $100,000. In return the passenger released all claims against both the Mulvaghs and USF&G.

USF&G then commenced an action in the Superior Court against Hanover on multiple theories requesting an order that Hanover pay all, or at least one-half of, the $100,000. USF&G and Hanover filed a statement of agreed facts and exhibits, together with cross motions for summary judgment pursuant to Mass. R. Civ. P. 56 (a) and (b), 365 Mass. 824 (1974), which led to the decision and judgment now before us finding each insurer liable for $50,000.

In *Mission Ins. Co.* v. *United States Fire Ins. Co.*, 401 Mass. 492 (1988), we discussed three types of "other insurance" clauses, pro rata, escape and excess,[2] and the methods employed by courts to resolve conflicts between them. We

_____

[2]"Pro rata clauses provide that, if other insurance is available to the insured, the policy containing the pro rata clause will contribute to the loss in the proportion that its policy limit bears to the total limit of all available policies. Escape clauses provide that, if there is other insurance available

noted in the *Mission Ins. Co.* decision that, in an effort to resolve such conflicts in the context of automobile insurance, " 'the majority of courts have embraced a humanistic rule of construction — insurance clauses that conflict are to be reconciled and interpreted upon the determination of the sense and meaning of the terms the parties used.' . . . This approach generally has resulted in giving excess clauses preference to escape and pro rata clauses and declaring mutual repugnancy where either excess or escape clauses appear in both policies." *Id.* at 496, quoting Kurtock, Overlapping Liability Coverage — The "Other Insurance" Provision, 25 Fed'n Ins. Couns. Q. 45, 46-47 (1974).

The *Mission Ins. Co.* decision further noted that, when mutual repugnancy occurs, each insurer should be "required to contribute to the loss, for to give effect to both clauses would result in no coverage for the insured." *Id.* at 496 n.4 (a finding that the insured has no coverage could leave the injured person without a recovery, a result which would contravene public policy where insurance exists). We concluded in the *Mission Ins. Co.* decision (which involved a conflict between two excess clauses) that repugnancy existed, and that the insurers had to contribute equally to the loss. *Id.* at 499. Finally, we emphasized in the *Mission Ins. Co.* decision that, in resolving conflicting "other insurance" clauses, we have acted consistently with the modern trend discussed above, *id.* at 496, and tried to apply an "analytical approach of giving effect to the policy language" in the antagonistic insurance contracts. *Id.* at 497, and cases cited.

The dispute in this case does not involve two excess clauses or an excess clause and a so-called "basic" escape clause, namely one that provides an insurer is not liable if other coverage is available. This dispute concerns a conflict between

---

to the insured, the policy containing the escape clause will pay no benefits. Excess clauses provide that, if there is other insurance available to the insured, the policy containing the excess clause will pay no benefits until such other insurance is exhausted. See generally 8A J.A. Appleman, Insurance Law and Practice § 4906, at 345-350 (rev. ed. 1981)." *Mission Ins. Co. v. United States Fire Ins. Co.*, 401 Mass. 492, 495 n.3 (1988).

the excess clause in the USF&G policy and the so-called "super-escape" clause in the Hanover policy which denies coverage when other valid and collectible insurance, *either primary or excess*, is available. See 8A J.A. Appleman, Insurance Law and Practice, § 4906, at 349-350 (rev. ed. 1981) (defining super-escape clauses).

When conflict occurs between a super-escape clause and an excess clause, courts are divided on how the conflict should be resolved. Some courts give effect to the specific language of a super-escape clause over that of an excess clause. See, e.g., *Royal Globe Ins. Cos.* v. *Safeco Ins. Co.*, 560 S.W.2d 22 (Ky. Ct. App. 1977); *Government Employees Ins. Co.* v. *Globe Indem. Co.*, 415 S.W.2d 581 (Ky. Ct. App. 1967); *State Farm Mut. Auto. Ins. Co.* v. *Western Casualty & Sur. Co.*, 477 S.W.2d 421, 425-427 (Mo. 1972); *Allstate Ins. Co.* v. *Shelby Mut. Ins. Co.*, 269 N.C. 341 (1967). Other jurisdictions, however, have decided that the policy with the super-escape clause is primary. See, e.g., *Insurance Co. of N. Am.* v. *Continental Casualty Co.*, 575 F.2d 1070 (3d Cir. 1978) (applying Pennsylvania law); *Protective Nat'l Ins. Co.* v. *Bell*, 361 So. 2d 1058 (Ala. 1978); *Automobile Underwriters, Inc.* v. *Hardware Mut. Casualty Co.*, 49 Ill. 2d 108 (1971). Still other courts have found the clauses to be mutually repugnant and have decided that damages should be shared proportionately. See, e.g., *Dette* v. *Covington Motors, Inc.*, 486 So. 2d 805 (La. Ct. App. 1986); *Brown* v. *Travelers Ins. Co.*, 610 A.2d 127 (R.I. 1992); *Hardware Dealers Mut. Fire Ins. Co.* v. *Farmers Ins. Exch.*, 444 S.W.2d 583 (Tex. 1969).

As has been discussed, we follow the majority approach which seeks, whenever possible, to reconcile conflicting policy clauses based on the sense and meaning of the terms in an effort to effectuate the language of the insuring agreements. *Mission Ins. Co., supra* at 495-496. As has also been discussed, this approach generally results in giving excess clauses preference to escape clauses, *id.* at 496, at least where the escape clause is of the basic type. See 16 G. Couch, Insurance § 62:77 (rev. 2d ed. 1983); Note, Resolu-

tion of Conflicting "Other Insurance" Clauses, 46 Ind. L.J. 270, 278 (1970-1971). The rationale behind the preference considers a policy constituting excess insurance as not furnishing "other collectible [or available] insurance" as far as the basic escape clause is concerned. *Horace Mann Ins. Co. v. Continental Casualty Co.*, 54 N.C. App. 551, 555 (1981), citing 16 G. Couch, Insurance § 62:76 (2d ed. 1966). A super-escape clause, however, specifying that even other insurance that labels itself "excess" will be primary, reverses that result, rendering the excess policy as one providing primary coverage. See Note, Resolution of Conflicting "Other Insurance" Clauses, *supra* at 279-280. 8A J.A. Appleman, *supra* at § 4910, at 470-473, and cases cited; 16 G. Couch, *supra* at § 62:76, and cases cited. This outcome is based on examination of the contract language. "[W]hen the escape clause expressly provides 'that the insurance does not apply to any loss covered by other specified types of insurance, including the excess insurance type, it has been held that the insurer whose policy so provides is absolved from liability.' "[3] *Horace Mann Ins. Co.* v. *Continental Casualty Co.*, *supra*, quoting 16 G. Couch, Insurance, *supra* at § 62:75. We conclude, after applying these principles to the conflicting clauses in this case, that the explicit and comprehensive language of the Hanover super-escape clause brings into effect

---

[3]The court in *Horace Mann Ins. Co.* v. *Continental Casualty Co.*, 54 N.C. App. 551, 556 (1981), describes the logic supporting this conclusion in the following manner:

"1. Parties may contract as they please, and their contract will be enforced by the court as written;

"2. Escape clauses and excess insurance clauses are not like provisions that are indistinguishable from each other so as to require the loss to be prorated between the carriers;

"3. When the parties contract that coverage will be precluded by the existence of other insurance, the existence of a policy with an excess insurance clause is not such an event as will set into motion the exclusionary provision in the first policy;

"4. However, when the other insurance escape clause is a super escape clause and expressly provides that coverage is precluded by the existence of excess coverage, the existence of a policy with an excess insurance clause *is* an event that sets in motion the provisions in the first policy" (emphasis in original).

the excess coverage provided by USF&G, making the latter solely responsible for the loss.

In reaching this conclusion, we have considered and rejected the arguments made by USF&G seeking to have its excess clause preferred or, at the minimum, declared to be a clause which creates a mutual repugnancy. We comment on those arguments.

(a) USF&G refers to the fact that, under G. L. c. 175, §§ 2B and 113A (1992 ed.), its policy language has been provided by the Commissioner of Insurance (commissioner) to be used as a "standard policy." The Hanover policy is not such a policy. It is therefore suggested that any ambiguity in the clauses should not be held against USF&G, because its policy was "drafted" by the commissioner, but should be held against Hanover because its policy essentially is its own product. USF&G goes on to suggest an interpretation of the Hanover clause which would, in effect, make it ambiguous and reduce it to a basic escape clause. Putting aside discussion of whether the required standard of the USF&G policy can be said to have been forced on USF&G, see the discussion by Justice Kaplan in *Commerce Ins. Co.* v. *Koch,* 25 Mass. App. Ct. 383, 387-388 (1988), the particular coverages at issue are "optional provisions whose content is not prescribed by statute." *Id.* at 387. More directly, we do not see any ambiguity in the Hanover clause, and we discern that, if the full scope of USF&G's arguments is accepted, virtually no effect would be given to the words "either primary or excess" in the Hanover clause. We consider the result suggested by USF&G at odds with the *Mission Ins. Co.* decision which calls for conflicting clauses to be reconciled, whenever possible, and their language given effect. *Mission Ins. Co., supra* at 495-496.

(b) USF&G points to the requirement in the Hanover clause that other insurance be "collectible" and "available" as defeating the intent of the Hanover super-escape clause.[4]

---

[4]The other insurance must also be "valid" in order for the Hanover clause to be effective. However, "validity," denoting, according to

With or without the phrase "either primary or excess," USF&G says, its coverage is not "available" because, being excess, it "is not triggered until all other primary coverage is exhausted." This argument is circular because it presupposes that Mulvagh is an insured under the Hanover policy, the exact point in issue. The argument, however, appears to go further, on the assumption by USF&G that the terms "collectible" and "available" are interchangeable,[5] and that both mean that the policy referred to (the USF&G policy) must be "primary" by its own definition for the super-escape clause to be effective. To be "available" and, therefore, primary, it would have to be shown that the USF&G policy had become primary because the owner of the automobile, Springfield Auto-Sales, Inc., either had no insurance at all, or a policy with limits insufficient to cover the passenger's damages.

This argument also is not persuasive. Our task is to determine what coverage Mulvagh had.[6] Mulvagh had express coverage under the USF&G policy (as a household member of his wife, the named insured in the USF&G policy), even though that policy sought to look to another insurer to pay on any loss first. An insured remains an insured as long as the policy is in effect. This is not entirely the case with automobile liability insurance subject to a super-escape clause. Such a policy unambiguously provides that one may be an

USF&G, proper execution and facial legality, does not appear to be at issue here. USF&G has never claimed that its policy was not valid in the sense described.

[5]The better definition of "collectible" in this context, and the one which would not make the word redundant, may be that the insurer is not insolvent and is capable of paying claims due. See *Massachusetts Insurers Insolvency Fund* v. *Continental Casualty Co.*, 399 Mass. 598, 599-600 n.2 (1987); *Commerce Ins. Co.* v. *Koch*, 25 Mass. App. Ct. 383, 386 n.6 (1988).

[6]We have laid to rest the notion that, when an insured driver is operating a nonowned vehicle whose owner also has insurance, the coverage on the vehicle is always primary while the driver's coverage is excess. See *Mission Ins. Co.* v. *United States Fire Ins. Co., supra* at 498-499, explaining *Transamerica Ins. Co.* v. *Norfolk & Dedham Mut. Fire Ins. Co.*, 361 Mass. 144, 148 (1972).

insured in some circumstances, but not in others. *State Farm Mut. Auto. Ins. Co.* v. *Burgin,* 752 F. Supp. 877, 886 (W.D. Ark. 1990) (applying Arkansas law). The *Mission Ins. Co.* decision, *id.* at 498, directs us to determine the relationship between insurer and insured as the first step in analyzing these conflicts. Mulvagh's relationship with USF&G as its insured, and his relationship with Hanover as a possible insured, are fundamentally different.

Hanover's named insured was a company which could be expected, at any given time, to be handling and dealing with vehicles that might occasionally be driven by customers. Hanover could reasonably anticipate that these customers would have their own liability insurance. The garage owner and the insurer, therefore, would be justified in expecting coverage through other automobile liability insurance. In view of the standard form of the Massachusetts operator's motor vehicle liability policy, the garage owner and insurer could anticipate that coverage for liability arising out of someone driving a nonowned vehicle might declare itself "excess." In the face of these facts, they also could reasonably enter a contract for insurance coverage for customers, in the relatively restricted circumstances of what happened here, a test drive, only in the unexpected event that the customer had no insurance, either primary or excess. The express terms of the Hanover policy, therefore, effectuate the intent of limiting the coverage provided to customers based on the realities of a garage operation. In this case, Mulvagh had no insurance under the Hanover policy, and it is proper under the USF&G policy to invoke coverage for the loss he caused.

(c) No legislative purpose is subverted by preferring the Hanover super-escape clause since coverage is afforded under some policy in an amount at least equal (in fact, well beyond) to what is required by the motor vehicle financial responsibility law. The purpose of the law — the protection of the traveling public and victims of motor vehicle accidents — is not compromised or affected.

The Legislature has not manifested any intent to provide "two tiers of coverage" for optional bodily injury. The appli-

cable statute, G. L. c. 175, § 113C (1992 ed.), requires insurers to offer optional bodily injury coverage in specified minimum amounts, but is silent as to an insurer's limiting or conditioning such coverage on the existence of other insurance. Further, neither the Legislature nor the commissioner has expressed a position on conflicting "other insurance" clauses in the context of automobile insurance. See *Mission Ins. Co.* v. *United States Fire Ins. Co.*, *supra* at 495. It cannot be argued convincingly that a clause in a garage policy like Hanover's violates public policy.[7]

The judgment is vacated. A new judgment is to enter declaring and adjudging that USF&G is responsible for the $100,000 in damages in this case.

*So ordered.*

---

[7]Appleman comments that escape clauses in garage policies do not violate public policy, as the garage typically makes no representations concerning insurance, and the driver's coverage continues. 8A J.A. Appleman, *supra* at § 4906, at 351. Generally, it is noted, such usage is local and for a limited period of time, and is often an accommodation, as where a customer is provided with a "loaner" while his own vehicle is being repaired, (or is permitted to test drive a vehicle) rather than the primary focus of the garage operation. *Id.* at § 4910, at 458. In such circumstances, it is reasonable that the customer's insurance be primary to the garage's insurance. *Id.* at § 4906, at 351.