Kottmyer, J.
INTRODUCTION
Plaintiff, Premier Insurance Company of Massachusetts (“Premier”), brings this action against defendant, Empire Fire and Marine Insurance Company (“Empire”), alleging unjust enrichment based upon Empire’s failure to pay a claim resulting from a collision involving a rental vehicle insured by Empire. Premier has filed a motion for summary judgment on the question of liability. For the following reasons, plaintiffs motion for summary judgment is ALLOWED.
SUMMARY JUDGMENT RECORD
The record, viewed in the light most favorable to the defendant, is as follows. This action arose out of a motor vehicle accident that occurred on October 10, 1996. Premier insured a vehicle owned by Maria Lugo (“Lugo”). While operating a rental vehicle owned by Policy Rent-A-Car and insured by Empire, Lugo struck a vehicle driven by Robert Turcotte (“Turcotte”). Turcotte sustained injuries as a result of the collision. It is undisputed that Lugo was at fault in the accident.
Turcotte’s insurer, Travelers Insurance Company (“Travelers”), demanded payment from both Premier and Empire for damage to Turcotte’s vehicle, as well as for bodily injuries. Lugo’s personal auto insurance policy from Premier contains an excess clause relating to compulsoiy bodily injury insurance, which provides:
If someone covered under this part is using an auto he or she does not own at the time of the accident, the owner’s auto insurance must pay its limits before we pay. Then, we will pay, up to the limits shown on your Coverage selection Page for any damages not covered by that insurance.
Premier paid for the excess portion of the damage to Turcotte’s vehicle and for bodily injuries Turcotte sustained as a result of the collision.
On March 28, 1997, in response to a conversation with Premier/Traveler’s claims representative,[1] Empire denied coverage based on an escape clause in Policy Rent-A-Car’s insurance policy with Empire, entitled “Contingent Insurance for Rentees.”[2] That clause provides: “This policy does not insure the ‘rentee’ or any driver designated in a rental agreement if there is any other applicable automobile liability insurance or self-insurance, whether primary, excess, or contingent, with limits of liability or retained limits at least equal to the limits provided by this policy.”[3]
On May 21, 1997, Vigars made a demand on Empire for payment of the $5,000 mandatory coverage for damage to Turcotte’s vehicle. At that point, Travelers had paid out $13,073.37 for the loss of which $8,073.37 had been paid by Lugo’s policy with Premier. On May 29, 1997, Empire responded citing United States Fidelity & Guaranty Co. v. Hanover Ins. Co., 417 Mass. 651 (1994), for the proposition that because its policy contained a “super escape” clause, “the only applicable policy for this loss” is Lugo’s policy with Premier. On December 8, 1997, Travelers again demanded payment of the $5,000 mandatory property coverage and an additional $2525, it had paid in Personal Injury Protection (PIP) payments to Turcotte. Travelers threatened arbitration and Empire paid the $5,000 properly damage limit and the PIP payment. In July of 1998, Premier settled Turcotte’s claim for bodily injuries. On December 4, 1998, Premier wrote to Empire noting that it had received payment up to the policy limit for damage to Turcotte’s vehicle and reimbursement of the PIP for Turcotte’s medical bills. It requested payment of $8,500, the amount it paid to settled Turcotte’s bodily injury claim. When Empire refused to pay, Premier filed this lawsuit.
*98 DISCUSSION
I. Summary Judgment
This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. See Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. See Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Once the party moving for summary judgment has shown that no genuine issue of material fact exists, the burden switches to the opposing party to respond and allege specific facts showing the existence of a genuine triable issue. See John B. Deary, Inc. v. Crane, 4 Mass.App.Ct. 719, 722 (1976).
The dispute in this case involves an alleged conflict between an excess clause in Lugo’s insurance policy and a so-called “contingent escape” or “escape excess clause” in Policy-Rent-A-Car’s insurance policy. The excess clause in Lugo’s policy provides that if other insurance is available to the insured, the policy containing the excess clause will pay no benefits until such other insurance is exhausted. See United States Fidelity & Guaranty Co. v. Hanover Ins. Co., 417 Mass. 651, 654 n.2 (1994); see also Mission Ins. Co. v. United States Fire Ins. Co., 401 Mass. 492, 495 n.3 (1988). It thus denies coverage to the insured to the extent other insurance is available. See U.S. Fidelity & Guaranty Co., 417 Mass. at 653-54 n.2. An escape clause denies coverage where other insurance is available and a super escape clause denies coverage when other insurance, either primary or excess, is available. Id. at 655, 656. A composite escape-excess clause is not a standard clause and may take many different forms. See 8A J.A. Appleman, Insurance Law and Practice, §4906, at 349-51 and §4910 at 457 and n.9, 470-73 (rev.ed. 1981). For example, the “Contingent Insurance For Rentees” clause at issue in this case permits escape if the loss is less than the combined limits of all other available insurance, primary and/or excess, and provides excess coverage to the extent that the limits of the policy exceed the combined limits of all other available insurance.[4]
Premier argues that the Contingent Insurance for Renters clause is a super escape clause and is void. Empire takes the position that it is not a super escape clause because it provides coverage to the extent that the loss exceeds the combined limits of all other available policies, primary or excess. But, in any case in which the driver has compulsory insurance, the effect of the language is the same as a super escape clause.[5] The policy excludes “rentees” from the definition of “insured” where there is other applicable insurance, primary or excess. It provides only mandatory coverage and no coverage unless its limits exceed the limits of all other insurance. Because the Empire policy provides only compulsory coverage, there will never be coverage under that policy where both the owner of the vehicle and the driver are insured in Massachusetts. As pointed out by Empire’s Claims Specialist, Tonya Truitt, in her May 29, 1997 letter denying coverage: “As our policy only provides the financial responsibility limits required by Massachusetts law, I feel certain Ms. Lugo’s policy limits with the Premier are at least equal to ours” and there is therefore no coverage under Empire’s policy.
Relying on U.S. Fidelity & Guaranty Co., supra, Empire argues that super escape clauses are enforceable in Massachusetts. In that case, a prospective automobile buyer who was test driving a dealership vehicle hit a telephone pole and injured a passenger. The dealership had a garage policy that contained a super escape clause providing coverage only if “no other valid and collectible automobile liability insurance, either primary or excess, ... is available.” Id. The driver of the dealership vehicle at the time of the accident had a personal automobile insurance policy which contained an excess clause. The Supreme Judicial Court held that the super escape clause in the dealership’s garage policy relieved the insurer of the dealership of liability. Id. at 656-57. In giving effect to the super escape clause, the Court, citing 8A J.A. Appleman, Insurance Law and Practice, supra §4910, at 458, emphasized that the clause did not violate public policy because a garage makes no representations concerning insurance and customers use the vehicles for a brief period of time, usually as “loaners” while their own vehicles are repaired or to test drive. U.S. Fidelity & Guaranty Co., 417 Mass. at 660 n.7.
The Supreme Judicial Court’s holding in U.S. Guaranty & Fidelity Co. is not controlling. In contrast to the present case which involves compulsory bodily injury coverage, the “particular coverages” at issue in that case were “optional provisions whose content is not prescribed by statute.” U.S. Guaranty & Fidelity Co., supra, 417 Mass. at 657 (citation omitted).[6] Like all owners of registered motor vehicles, car rental agencies are required by statute, G.L.c. 90, §§1A, 34A, to provide compulsory bodily injury insurance on rental vehicles they own. The statute expressly requires the policy to provide coverage where, as here, “the vehicle is being operated by another person with [the insured’s] express or implied consent.” G.L.c. 90, §34A.
If enforced, the clause in question denies coverage in every case in which the authorized driver has compulsory liability coverage. Although registered in Massachusetts, the vehicle is not covered unless the authorized driver is not insured to the mandatory limit under any motor vehicle liability policy. But the statute imposes the duty to carry compulsory bodily injury liability insurance “with respect to such motor vehicle” as a condition of registration of the vehicle. G.L.c. 90, §1A, §34A; c. 175, §113A. See O’Brien v. Ready, 331 *99 Mass. 2004, 207 (1954). Permitting the registered owner of á vehicle to avoid primary responsibility for compulsory bodily injury coverage via a super escape or composite escape-excess clause is inconsistent with the statutory scheme and violates public policy. See Alamo Rent-A-Car, Inc. v. Matchem, Civil No. 97-2317 (Suffolk Super. Ct. Dec., 1999) (Gants, J.) (11 Mass. L. Rptr. 9); Bowers v. Alamo-Rent-A-Car, Inc., 965 P.2d 1274, 1277-78 (Haw. 1998); Hertz Corp. v. State Farm Mut. Ins. Co., 573 N.W.2d 686 (Minn. 1998); State Farm Mut. Auto Ins. Co. v. Enter. Leasing Co., 549 N.W.2d 345 (Mich. 1996); State Farm Mut. Auto Ins. Co. v. Clarendon Nat’l Ins. Co., 604 A.2d 384 (Dec. 1992).[7] See also New Hampshire Indem Co., Inc. v. Budget Rent-A-Car Systems, Inc., 35 P.3d 1180 (Wash.Ct.App. 2001).
It is true that there are no circumstances in which an accident involving the rental vehicle would not be covered to the mandatory limit. But, as stated by the Hawaii Supreme Court in Bowers, supra, 965 P.2d at 1279:
The owner of the automobile is responsible for providing coverage. The owner... may not meet the obligations of the law by contractually shifting responsibility to the driver’s insurance company.
A different rule would encourage attempts by all holders of motor vehicle liability insurance policies to reduce their premiums by incorporating competing "super escape” or “escape excess” clauses in their policies, leading to disputes between insurers, delays in the payment of valid claims and increased litigation, the very evils which the statute was designed to address.
In a case decided after U. S. Fidelity & Guaranty Co., Alamo Rent-A-Car, Inc. v. Matchem, supra (11 Mass. L. Rptr. 9), this Court (Gants, J.) held that reliance on a super escape clause in its insurance policy by a car rental agency violates public policy. Alamo Rent-A-Car, Inc., supra.[8] The policy reasons cited by Judge Gants in support of his holding militate against enforcement of such clauses in the context of compulsory bodily injury coverage, whether they are worded as “super escape clauses” or “escape-excess” clauses. Providing insurance is an integral part of the car rental business. A business which rents or leases vehicles minimizes its insurance premiums by obtaining an insurance policy with a clause that effectively provides compulsory liability coverage only when the driver is uninsured. Blanket enforcement of such clauses would shift insurance costs to personal motor vehicle insurance and away from commercial insurance.
Requiring dealerships and garages to pay additional premiums as primary insurers could lead them to limit the availability of incidental services like providing “loaners” to customers whose vehicles are being repaired. No comparable benefit results, however, from allowing rental car companies to shift insurance costs to their drivers. On the contrary, the obligation to pay premiums will provide a financial incentive for businesses which rent cars to the public to reduce the number of accidents involving their vehicles by exercising care in renting the vehicles and by ensuring that the vehicles are safe to drive. Alamo Rent-A-Car, Inc., Civil No. 97-2317 (Suffolk Super. Ct. Dec., 1999) (Gants, J.) (11 Mass. L. Rptr. 9).
Empire argues that the complaint does not state a claim for relief on a theory of unjust enrichment because such a remedy is available only in cases involving breach of contract, breach of fiduciary duty or fraud. This argument is without merit. The court may grant relief based on the principle of unjust enrichment when a “quasi-contract” or “implied-in-law contract” exists, i.e., “an obligation created by law ‘imposed for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent’. . .” Salamon v. Terra, 394 Mass. 857, 859 (1985), citing 1A Corbin, Contracts §19 (1963). A contract implied in law is not really a contract, but a legal obligation closely akin to a duty to make restitution. Id. It is not essential that the plaintiff prove an express provision of contract relating to subrogation, because the right rests on natural justice and equity. Richard W. Bishop, Complaints Based on Substantive Doctrines of Equity §46.10, at 17 (1997).
The doctrine of equitable subrogation has clear application to the facts of this case. Subrogation is an equitable adjustment of rights that operates when a creditor or victim of loss is entitled to recover from two sources, one of which bears a primary legal responsibility. See Frost v. Porter Leasing Corp., 386 Mass. 425, 426-27 (1982). If the secondary source pays the obligation, it succeeds to the rights of the party it has paid against the party primarily responsible. Id.; Travelers Ins. Co. v. Graye, 358 Mass. 238, 240-41 (1970). The doctrine of subrogation applies to payments under insurance policies. Courts have longrecognized, either as subrogation or indemnity, the right of an insurance company, which pays a claim, to seek reimbursement from another insurer that should have satisfied the claim. See National Union Fire Ins. Co., 269 Ga. at 768, 769, 504S.E.2d 673, 675 (1998). Although a volunteer has no right of subrogation, an insurer will not be deemed a volunteer when it makes a payment to or on behalf of an insured in good faith and under a reasonable belief that the contract required the payment. See National Union Fire Ins. Co., 269 Ga. at 771, 504 S.E.2d at 676. See also Appleman, 8A Insurance Law and Practice §4922 at 550.
Public policy is served when insurers act promptly to pay legitimate claims.[9] Turcotte was entitled to recover under one of the two policies. The public policy favoring the prompt settlement of valid claims is served by a rule which encourages insurers to act promptly to protect their insureds’ interests and to resolve disputes among themselves afterwards.
*100 Empire’s argument that it will be prejudiced if the Court grants equitable relief because it did not have notice of or an opportunity to participate in the investigation of the claim or the negotiations leading to settlement is also without merit. The record reflects that Empire received notice of the accident on October 18, 1996. Empire learned that Turcotte suffered injury on December 8, 1997, when it received a Personal Injury Protection (“PIP”) subrogation request. It paid $5,000 in mandated liability coverage for damage to Turcotte’s vehicle and $2,525 in PIP benefits. On March 28, 1997, over fifteen months before it settled Turcotte’s claim, Premier made a claim against Empire and Empire denied coverage. Premier subsequently settled Turcotte’s claim for $8,500 in July of 1998. Empire had notice of the claim, but elected not to investigate and to deny coverage.
ORDER
For the reasons stated above, it is hereby ORDERED that plaintiff Premier Insurance Company of Massachusetts’ motion for summary judgment on the issue of liability is ALLOWED.

 Both Premier and Travelers are members of Travelers Group and a single claims representative, Lori Vigars, handled the loss for both Travelers, Turcotte’s insurer, and Premier, Lugo’s insurer.

 The policy itself is entitled “Rental Auto Coverage Form.”

 The clause further states:
a. Such person becomes an “insured” under this Coverage Form only for the amount by which the limits provided by this Coverage Form exceed the limits of all other insurance, whether primary, excess, or contingent; and
b. All other insurance or self-insurance, whether primary, excess, or contingent, shall be primary, and any insurance provided by this policy shall be excess over all other such insurance

 A composite escape-excess clause may also, like the Amendatoiy Endorsement in the second policy issued by Empire, provide coverage for liability above the combined limits of all other available insurance, primary and excess. This formulation is “a true excess clause” and might more aptly be described as a “super excess clause.” See Fremont Indem. Co. v. New England Reinsurance Co., 815 P.2d 403, 407 (Ariz. 1991).

 Indeed, in a letter to Premier dated May 29, 1997, Empire described the clause as a “super escape clause.”

 Although insurance companies writing motor vehicle liability policies are required to offer optional coverage, G.L.c. 175, §113C, owners of vehicles are not required to cariy it.

 Although other courts have reached a contrary conclusion, see, e.g., Irvin v. Rhodes, 929 S.W.2d 829 (Mo.Ct.App. 1996), and Co-Operators, Ins. v. Allstate Rent-A-Car, 804 P.2d 1050 (Nev. 1991), those courts have not in my view given adequate consideration to the public policy implications of a rule which permits the registered owner of a vehicle unilaterally to escape its obligation to provide compulsory bodily injury coverage for the vehicle. They focus on contract interpretation, an exercise of questionable utility given that there is no contract between the insurers and that super escape and composite escape-excess clauses are not standard clauses.

 In its decision, the Court noted that Appleman, cited by the Supreme Judicial Court in U.S. Fidelity & Warranty Co., for the proposition that super escape clauses in garage polices do not violate public policy, advocated a different result in the case of policies held by automobile rental agencies. 8A J. Appleman, supra, §4906 at 351-52.

 G.L.c. 176D, §2 prohibits unfair claim settlement practices in the business of insurance. A violation of G.L.c. 176D, §3(9) gives rise to a private right of action under Chapter 93A. See G.L.c. 93A, §9(1). Chapter 176D defines as an “[ujnfair claim settlement practice [ ]. . . [flailing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear . . G.L.c. 176D, §3(9)(f).