MISSION INSURANCE COMPANY *vs.* UNITED STATES FIRE
INSURANCE COMPANY.

Suffolk.   October 6, 1987. — January 11, 1988.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Insurance,* Liability insurance, Coverage, Construction of policy, Contribution among insurers.

Discussion of the rules developed to resolve conflicts between "other insurance" clauses in liability policies issued by different insurers against the same risk. [495-497]

In an action by an "excess" insurer seeking a declaration that another excess insurer must contribute to a tort claim settlement, this court held the "other insurance" language of the umbrella-type excess insurance policies at issue to be conflicting and declared that, inasmuch as the clauses were mutually repugnant, both insurers must contribute to settle the loss [497-500] and, as the policies were silent on the matter of percentage of contribution, the insurers would be required to pay in equal amounts until the lower limit policy was exhausted [500-501]. WILKINS, J., dissenting, with whom LYNCH, J., joined.

CIVIL ACTION commenced in the Superior Court Department on June 20, 1984.

The case was heard by *John Paul Sullivan,* J., on a motion for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Carol A. Griffin* for the plaintiff.

*Susan H. Williams* for the defendant.

HENNESSEY, C.J. The plaintiff, Mission Insurance Company (Mission), seeks a declaration under G. L. c. 231A, § 1 (1986 ed.), that the defendant, United States Fire Insurance Company (U.S. Fire), must contribute to a tort claim settlement negotiated by Mission and two primary insurers. On cross motions for summary judgment, a Superior Court judge agreed

with U.S. Fire's view that the insurance provided by U.S. Fire is excess of that provided by Mission, and therefore U.S. Fire need not contribute to the settlement until the Mission policy is exhausted. We granted Mission's application for direct appellate review. We reverse this judgment, and rule instead that Mission and U.S. Fire are excess insurers to the same degree, and must contribute equally to the settlement up to the limits of their policies once the primary policies are exhausted.

Mission issued an "Umbrella Liability Insurance" policy to the lessor of a vehicle involved in the accident which gave rise to the settlement at issue.[1] U.S. Fire issued a "Commercial Comprehensive Catastrophe Liability Policy" to the vehicle lessee. There is no dispute that, in the absence of other insurance, each of the policies provides coverage for the losses resulting from the accident.

The Mission policy contains a "Limit of Liability" clause which states that the policy provides coverage excess of that given by primary insurance obtained by the lessor listed in an attached schedule. U.S. Fire's "Retained Limit — Limit of Liability" clause indicates that U.S. Fire's coverage is excess of primary insurance obtained by the lessee listed in an attached schedule. U.S. Fire's limit of liability clause also states that the coverage is excess of the "limits of any other insurance collectible by the insured." Both policies also contain "Other Insurance" clauses indicating that the coverage they provide is excess of all "other valid and collectible insurance . . . available to the insured" unless such other insurance is specifically intended to be excess of themselves. Neither policy is listed in the other's schedule of underlying policies.

U.S. Fire contends that the language of Mission's limit of liability clause indicates an intent to provide coverage as soon as the policies listed in the schedule attached to the Mission policy are exhausted. U.S. Fire notes that, unlike its own limit of liability clause, the Mission clause does not say that the coverage provided is excess of all other insurance collectible by the

---

[1] The lessee's employee was operating the vehicle at the time of the accident.

insured. U.S. Fire contends that, to the extent that Mission's limit of liability clause is inconsistent with Mission's other insurance clause, which does say it is excess of all other available coverage, Mission has created an ambiguity which should be construed adversely to Mission. U.S. Fire points to the consistency of its own limit of liability and other insurance clauses and concludes that its coverage is excess of that provided by the inconsistently worded Mission policy.

U.S. Fire alternatively argues that *Transamerica Ins. Co.* v. *Norfolk & Dedham Mut. Fire Ins. Co.*, 361 Mass. 144 (1972), requires a ruling that its coverage is excess of Mission's. U.S. Fire reads *Transamerica* to require all coverage provided to the owner of a vehicle to be exhausted before the driver's insurers are obligated to pay.

Mission, not surprisingly, takes a different view. Mission argues that both policies are designed to provide excess umbrella-type coverage. Mission contends that, where the "other insurance" clauses in two policies purport to make each policy excess of all others, this court should follow the majority approach of declaring the clauses mutually repugnant and requiring the insurers to contribute to the settlement on a proportionate basis. E.g., *Lumbermens Mut. Casualty Co.* v. *Allstate Ins. Co.*, 51 N.Y.2d 651, 655 (1980); 16 M.S. Rhodes, Couch's Cyclopedia of Insurance Law §§ 62:79-62:80 (2d ed. rev. 1983). Under this approach, each insurer would pay in the proportion that its coverage bears to the total coverage provided by the two policies. Mission also argues that its failure to make itself excess of all collectible insurance in the limit of liability clause creates no ambiguity because that clause speaks to Mission's relationship with its insured while the "other insurance" clause delineates Mission's relationship with other insurers.

U.S. Fire counters that the "other insurance" clauses should not be read as mutually repugnant here because to do so distorts other language in the policies. See *State Farm Fire & Casualty Co.* v. *LiMauro*, 65 N.Y.2d 369, 374 (1985); *Lumbermens Mut. Casualty Co., supra* at 655-657. Finally, U.S. Fire con-

tends that, if it is required to contribute to the settlement with Mission, it should do so on an equal, not a proportionate, basis.[2]

This case requires close construction of the policies' terms, and entry into the morass created by the existence of overlapping insurance and "other insurance" clauses. "Other insurance" clauses, clauses designed to establish a policy's relationship with other policies covering a loss, were first developed in the real property fire insurance field in order to prevent owners from overinsuring. 16 M.S. Rhodes, *supra* at § 62:32, at 467. Note, Conflicts Between "Other Insurance" Clauses in Automobile Liability Insurance Policies, 20 Hastings L.J. 1292, 1292-1293 (1969). The Commonwealth's statutorily prescribed fire insurance policy now prevents any conflict between "other insurance" clauses in the real property fire insurance context by requiring all policies covering the property to share in the loss on a proportionate basis, G. L. c. 175, § 99 (1986 ed.). No such statutory solution has developed in the automobile insurance context.

In general, there are three types of "other insurance" clauses — pro rata, escape, and excess. See generally *National Indem. Co.* v. *Continental Ins. Co.,* 61 Md. App. 575, 578-579 (1985); 8A J.A. Appleman, Insurance Law and Practice § 4906, at 345-350 (rev. ed. 1981).[3] In sorting out the many conflicts between the different types of "other insurance" clauses, courts

---

[2] U.S. Fire also points to language in the lease agreement stating that the lessor is primarily responsible for insuring the vehicle as indicating that the U.S. Fire policy provides coverage excess of Mission's. The lessor and lessee are not parties to this suit, however, and their agreement has no impact on the obligations undertaken by Mission and U.S. Fire to them in the respective policies. See *Beattie* v. *American Auto. Ins. Co.,* 338 Mass. 526, 530-531 (1959).

[3] Pro rata clauses provide that, if other insurance is available to the insured, the policy containing the pro rata clause will contribute to the loss in the proportion that its policy limit bears to the total limit of all available policies. Escape clauses provide that, if there is other insurance available to the insured, the policy containing the escape clause will pay no benefits. Excess clauses provide that, if there is other insurance available to the insured, the policy containing the excess clause will pay no benefits until such other insurance is exhausted. See generally 8A J.A. Appleman, Insurance Law and Practice § 4906, at 345-350 (rev. ed. 1981).

have taken a number of approaches. Originally, in the fire insurance context, rules were developed and applied such as: the more specific insurer is primarily liable; the insurer of the primary tortfeasor is primarily liable; and the insurer whose policy bears the earliest effective date is primarily liable. See Kurtock, Overlapping Liability Coverage — The "Other Insurance" Provision, 25 Fed'n Ins. Couns. Q. 45, 46-47 (1974); Note, 20 Hastings L.J., *supra* at 1297-1299.

Finding that the rules developed to resolve conflicts between "other insurance" clauses in the fire insurance context "were not amenable to resolving overlap problems facing automobile insurers. . . . [T]he majority of courts have embraced a humanistic rule of construction — insurance clauses that conflict are to be reconciled and interpreted upon the determination of the sense and meaning of the terms the parties used." Kurtock, *supra*. This approach generally has resulted in giving excess clauses preference to escape and pro rata clauses and declaring mutual repugnancy where either excess or escape clauses appear in both policies. See, e.g., *National Indem. Co.* v. *Continental Ins. Co., supra* at 579; Note, 20 Hastings L.J., *supra* at 1294-1303.[4] In sum, in approaching conflicting other insurance clauses, the courts have rejected the early formalistic rules, and now seek to effect "the terms of [each insurer's] contract with its insured." *State Farm Fire & Casualty Co.* v. *LiMauro, supra* at 373.

While this court has not decided any cases directly involving a conflict between excess clauses, we have faced related cases and cases in the general insurance context. Our approach in these cases, consistent with the modern approach to conflicting "other insurance" clauses, has been to attempt to effectuate the language of the policies at issue. See *Reliance Ins. Co.* v. *Aetna Casualty & Sur. Co.*, 393 Mass. 48, 52 (1984) (court will apply clear language of policy despite evidence that parties'

---

[4] Where policies each contain excess or escape clauses, they are declared mutually repugnant, and each insurer is required to contribute to the loss, for to give effect to both clauses would result in no coverage for the insured. See *State Farm Fire & Casualty Co., supra* at 373-374; 8A J.A. Appleman & J. Appleman, *supra* at § 4909, at 395-403.

intent may have been different). This approach is merely an outgrowth of the general rules that language in insurance policies should be given its ordinary meaning, *Slater* v. *United States Fidelity & Guar. Co.*, 379 Mass. 801, 803 (1980), and that insurance policies should be construed as a whole "without according undue emphasis to any particular part over another." *Woogmaster* v. *Liverpool & London & Globe Ins. Co.*, 312 Mass. 479, 481 (1942). A review of our cases reveals our analytical approach of giving effect to the policy language. See, e.g., *Beattie* v. *American Auto. Ins. Co.*, 338 Mass. 526 (1959) (where no provision of either policy made it excess to the other, insurers cover the loss equally); *August A. Busch & Co.* v. *Liberty Mutual Ins. Co.*, 339 Mass. 239 (1959) (provision in one policy made it excess to second policy as to the first $10,000 of loss).

U.S. Fire's failure to appreciate our analytical approach in these cases causes it to argue that *Transamerica Ins. Co.* v. *Norfolk & Dedham Mut. Fire Ins. Co.*, 361 Mass. 144 (1972), requires us to find that its coverage is excess of Mission's. In *Transamerica, supra,* the owner of an automobile was injured while riding in it as a passenger. The driver had the owner's consent to operate the vehicle. Both the owner's insurance of the automobile involved in the accident and the driver's insurance of his own automobile provided coverage for the owner's injuries. The policies contained identical "other insurance" clauses which indicated that, where covered losses occur in connection with the use of a vehicle not owned by the policyholder, the coverage provided is excess of other available insurance. This court followed the majority approach in these circumstances and ruled that "the coverage on the car is primary while the coverage of the driver is excess as between two automobile insurers whose policies contain identical 'other insurance' clauses." *Id.* at 148 & n.5. While we ruled that the driver's policy was excess of the owner's, properly understood the case does not establish, as U.S. Fire argues, a hard and fast rule that in all circumstances and under all policies insurance on the vehicle is primary while insurance of the driver is excess. Instead, this court effectuated the policy language

before it. The owner's policy provided primary coverage where his automobile was involved in an accident, and this language was given effect. The driver's policy provided excess coverage where the driver operated a nonowned vehicle and this was given effect. Thus, *Transamerica, supra,* and our other decisions, require us to determine whether language contained in the U.S. Fire or Mission policies establishes that Mission's coverage must be exhausted before U.S. Fire contributes to the settlement.

In accord with our approach, we now give effect to the language contained in the Mission and U.S. Fire policies. That both the Mission and U.S. Fire policies provide excess umbrella-type coverage is apparent in their language and the scope of risks they insure. Although it is not determinative, we note that both policies bear titular designations generally associated with umbrella-type coverage: Mission's is entitled "Umbrella Liability Insurance" and U.S. Fire's is entitled "Commercial Comprehensive Catastrophe Liability Policy." Mission's limit of liability clause tells its insured that the policy provides coverage excess to that provided by those policies in an attached schedule. Mission's "other insurance" clause tells its insured that the provided coverage is excess of any other insurance covering the insured whether listed or not, and whether procured by the insured or not. Similarly, U.S. Fire's limit of liability clause and "other insurance" clause both indicate that the U.S. Fire policy provides excess coverage. Further, both policies cover wide risks ranging from personal injury to advertising liability in various contexts. In sum, as between each insurer and its insured, each policy creates umbrella-type excess insurance.

Having established Mission's and U.S. Fire's relationship with their insureds, we now turn to their relationship with one another. Unlike in *August A. Busch & Co., supra* at 240, there is no provision in either of the policies specifically making the coverage provided excess of the other policy. See also *Transamerica, supra* at 148 (policies both state that where driver does not own vehicle involved in accident, driver's coverage is excess). In the circumstances of this case, rather, we are left

with conflicting excess clauses. If both of these clauses are given effect, each insurer would seek to defer to the other leaving no coverage for a loss each has been compensated to recompense. *State Farm Fire & Casualty Co., supra* at 373-374. 8A J.A. Appleman, *supra* at § 4909, at 395-403. To avoid this result, we adopt the majority approach in these circumstances and declare that, where excess clauses conflict, they are mutually repugnant and both insurers must contribute to the loss.

In reaching this conclusion, we reject U.S. Fire's argument that Mission's failure to state in its limit of liability clause, as Mission did in its "other insurance" clause, that the coverage Mission provides is excess of all other collectible insurance, creates an ambiguity which should be construed against Mission. The difference in Mission's limit of liability clause and "other insurance" clause creates no ambiguity justifying an outcome adverse to Mission. From a reading of the Mission policy as a whole, *Woogmaster, supra* at 481, it would be clear to Mission's insured that the policy provides excess umbrella-type coverage as detailed above. The only colorable ambiguity which arises occurs when the language of Mission's limit of liability clause is compared with the language of U.S. Fire's limit of liability clause. The existence of this "ambiguity," created by comparing Mission's policy with a separate unrelated document, does not justify construing Mission's policy other than as written.

We also reject U.S. Fire's argument that to hold the excess clauses mutually repugnant distorts other language in the policies. U.S. Fire relies on a number of decisions of the Court of Appeals of New York for this proposition. *State Farm Fire & Casualty Co., supra. Lumbermens Mut. Casualty Co., supra.* As the Court of Appeals stated in *State Farm Fire & Casualty Co, supra* at 375, "[t]he rule to be distilled from these cases is that an insurance policy which purports to be excess coverage but contemplates contribution with other excess policies or does not *by the language used negate that possibility* . . . must be exhausted before a policy which expressly negates contribution . . ." (emphasis added). In our

case, both the Mission and the U.S. Fire "other insurance" clauses contain language expressly negating the possibility of contribution. In the decisions relied on by U.S. Fire, only one policy contained this language, or other language in the policies at issue allowed the court to declare one policy excess of the other. *Id.* at 376-377. *Lumbermens Mut. Casualty Co., supra* at 654-656. As a result, our case is distinguishable from these New York decisions, and more generally from *August A. Busch & Co., supra,* because there is no language in one policy which makes its coverage excess of the other. See *Beattie, supra* at 530.

Having determined that U.S. Fire must contribute to the settlement, we now must determine the amount of each insurer's contribution. After deducting available primary coverage, the settlement requires a contribution of approximately $430,000 by the excess insurers. Mission argues that each insurer should pay the percentage of this amount that its policy limit bears to the total combined policy limits. Mission provides up to $1,000,000 of coverage while U.S. Fire provides up to $3,000,000 of coverage. Thus, Mission contends it should pay one-fourth of the $430,000 and U.S. Fire should pay three-fourths of that amount. U.S. Fire contends that the insurers should contribute equally (one-half each) to the $430,000. The policies are silent on the matter of percentage of contribution with other insurers.

After reviewing the authorities cited by the parties, we determine that, in the absence of language controlling the issue, the better approach is to require the insurers to contribute equally until the policy with the lower limit is exhausted. Any remaining amounts due would be paid by the remaining insurer until its policy limit is also exhausted. Mission's argument that proportionate contribution better reflects the insurers' undertaking is not persuasive. Because premiums generally do not increase proportionately with the amount of coverage provided, the proportionate method will not always reflect the insurers' undertakings. See *Reliance Ins. Co.* v. *St. Paul Surplus Lines Ins. Co.,* 753 F.2d 1288, 1291-1292 (4th Cir. 1985). Further, while it will not always be clear what factors caused or allowed

insurers to provide given levels of coverage for whatever premium,[5] what will be clear is that each insurer has been compensated to provide coverage for the loss. In such circumstances, it is equitable to require the insurers to pay equally for the loss up to their respective policy limits. See *Cosmopolitan Mut. Ins. Co.* v. *Continental Casualty Co.*, 28 N.J. 554, 564 (1959).

The judgment below is vacated. A new judgment is to be entered declaring that there is owing from U.S. Fire to Mission $214,598.39, which represents one-half of the excess insurers' obligations in the settlement.[6]

*So ordered.*

WILKINS, J. (dissenting, with whom Lynch, J., joins). The Superior Court judge was right. The U.S. Fire coverage is excess of the Mission coverage. The limit of liability clauses call for that conclusion, and the "other insurance" clauses do not change the result.

The Mission policy provides that it is excess of "the limits of the underlying insurances set out in the attached schedule." The U.S. Fire policy was not listed on the attached schedule.

---

[5] The fact is that, in this case, Mission received a higher premium for lower levels of coverage.

[6] Mission notified U.S. Fire of the settlement negotiations and invited U.S. Fire to join in them. U.S. Fire declined to do so, contending that its coverage was excess of Mission's — a contention we have rejected. Our cases make clear that a party such as Mission is not barred by settlement of a claim from seeking recompense from other liable parties. E.g., *Fireside Motors, Inc.* v. *Nissan Motor Corp. in U.S.A.*, 395 Mass. 366, 370-371 (1985), and cases cited; *Berke Moore Co.* v. *Lumbermens Mut. Casualty Co.*, 345 Mass. 66, 70-71 (1962). At no point in the course of this litigation has U.S. Fire contended that the settlement was unreasonable. Therefore, the question need not be considered. See *Franklin* v. *North Weymouth Coop. Bank*, 283 Mass. 275, 282 (1933). We note, however, that a party that refuses to participate in settlement negotiations following notification may face an increased burden if it later seeks to have the settlement terms declared unreasonable. See *Berke Moore Co.*, *supra* at 70 ("[indemnitee] should not be crowded into a worse position" by indemnitor's advance disclaimers).

Thus Mission does not state it is excess of U.S. Fire's coverage. The U.S. Fire policy, on the other hand, provides coverage in excess of "the total of the applicable limits of the underlying policies listed in Schedule A hereof, and *the applicable limits of any other insurance collectible by the insured*" (emphasis supplied). Mission's policy is "other insurance collectible by the insured" as to which U.S. Fire states it is excess. The limit of liability clauses standing alone unquestionably place U.S. Fire's coverage in excess of Mission's coverage.

The policies' "other insurance" clauses do not permit, much less require, a different conclusion. Mission's "other insurance" clause seeks to place Mission's obligations in excess of any other valid and collectible insurance covering a loss except "insurance that is specifically stated to be excess of this policy." U.S. Fire's policy specifically states that it is in excess of Mission's policy. U.S. Fire's "other insurance" clause says that, if other insurance is available, U.S. Fire will be excess as to that insurance "except insurance purchased to apply in excess of . . . the limit of [U.S. Fire's] liability" under its policy. Mission's coverage was not purchased to be in excess of U.S. Fire's coverage. It was purchased to be in excess of certain listed policies of which U.S. Fire's policy was not one. Thus U.S. Fire's coverage is in excess of Mission's coverage.

The court never explains why this straightforward conclusion, based on uncomplicated policy language, should be rejected. My conclusion is consistent with the fact that Mission provided less coverage ($1,000,000 v. $3,000,000) for a substantially higher annual premium ($7,900 v. $1,500).