van Gestel, J.
This matter is before the Court on three summary judgment motions, in their order of filing, as follows: Underwriters’ Motion for Partial Summary Judgment That No Duty to Defend Exists Under the OCIP Policy (Paper #24); Massachusetts Port Authority’s Motion for Summary Judgment on Count IV (Paper #29); and Ace USA’s Cross Motion for Summary Judgment on Count IV (Paper #33).
BACKGROUND
The Massachusetts Port Authority (“Massport”) seeks, among other things, declaratory judgment as to a duty to defend under Airport Contractors Liability Insurance Policy No. 548/AA9500070 (the “OCIP Policy”) with respect to an action pending in Suffolk Superior Court captioned Bussell v. Yasri, Civil Action No. 00-5279 (the “Bussell Action”).
Certain Underwriters at Lloyds’ (“Underwriters”) are subscribers to Renewal Policy No. 548/AA0007000, renewing Policy No. 548/AA9500070 for the policy period 1 July 2000 to 30 June 2001.
Massport is a named defendant in the Bussell Action, an action brought by Maria Bussell, her husband and her children alleging catastrophic personal injuries and loss of consortium arising out of an accident that occurred at the passenger arrival and pick-up area of Terminal C at Logan International Airport.
The complaint in the Bussell Action alleges that while Mrs. Bussell was loading bags into her vehicle, a vehicle operated by Eleonore Yasri hit her from behind resulting in the traumatic amputation of one leg, debilitating injuries to her other leg, and other physical, emotional and psychological injuries. At the time of the accident, Mrs. Bussell’s car was parked next to the curb of an island in the lower level of Terminal C, in an area designated “curbside pick-up area.”
The Bussell complaint alleges that Mrs. Bussell’s injuries were caused by the negligence of Massport and the other named defendants: Gilbane, Incorporated; M. DeMatteo Construction Company; O’Brien-Kreitzberg Incorporated; Cambridge Seven Associates, Inc.; Vollmer Associates; Karen Lewise Design, Inc.; and Mr. and Mrs. Yasri, the owner and driver, respectively, of the vehicle that hit Mrs. Bussell.
The Bussell complaint alleges numerous bases for liability, including that due to ongoing construction at Terminal C, a portion of the roadway was blocked off and, as a result, the area for passenger pick-up was reduced and that the arrival level of Terminal C, as it existed on the day of the accident, was negligently designed and unsafe, creating a hazard to the public.
The OCIP Policy contains the following provisions.
Now, we Underwriters hereby agree to the extent and in the manner hereinafter provided, to pay on behalf of the Assured all sums which the Assured shall become legally obligated to pay or by final judgment be adjudged to pay up to but not exceeding the amounts specified in the Schedule, to any person or persons as damages
(a) for bodily injury including death at any time resulting therefrom (hereinafter referred to as bodily injuiy) or
caused by accident occurring during the period mentioned in the Schedule and arising out of hazards set forth below
bodily ... in or about the premises specified in item 5 of the Schedule and as a direct result of the performance of the Contract specified in item 4 of the Schedule, caused by the fault or negligence of the Assured or any of his employees engaged in the Assured’s business.

Payment of Costs

In addition to the limits set out in the Schedule, Underwriters will pay all legal and other costs incurred with their consent in the defence of any claim made against the Assured.

Provided that

In the event of their requiring any claim to be contested
(a) If the claim be successfully resisted by the Assured the Underwriters will pay all costs, charges and expenses incurred by the Assured in connection therewith up to but not exceeding the sum insured by this Policy.
(b) If a payment exceeding the sum insured has to be made to dispose of a claim, the liability of Underwriters to pay any costs, charges and expenses in connection therewith shall be limited to such proportion of the said costs, charges and expenses *590 as the sum insured by this Policy bears to the amount paid to dispose of the claim.
It is a condition precedent to the right of the Assured to be indemnified under this Insurance that:
(b) No liability shall be admitted and no admission, arrangement, offer, promise or payment shall be made by the Assured without the written consent of Underwriters, who shall be entitled, if they so desire, to take over and conduct in the name of the Assured the defence of any claim or to prosecute in the name of the Assured for their own benefit any claim for indemnity or damages or otherwise against any third party, and shall have full discretion in the conduct of any negotiations or proceedings or the settlement of any claim, and the Assured shall give all such information and assistance as Underwriters may require.
Underwriters have not elected to take over or conduct the defense of Massport in the Bussell. Action.
Underwriters have never consented to the defense or legal costs incurred by Massport in connection with the underlying litigation.
The OCIP Policy also contains an “other insurance” clause that reads: “If any claim under this policy is also covered in whole or in part by other insurance, the liability of Underwriters shall be limited to their rateable proportion of such claim.”
In addition to the OCIP Policy, Massport maintains an Airport Owners and Operators General Libaility Policy with Ace USA, Policy No. AAP N00027236, for the relevant period (the “Ace Policy”). The Ace Policy mandates that Ace USA indemnify Massport and provide for Massport’s defense in claims for bodily injury, such as the Bussell Action, occurring at Logan International Airport. The pertinent language of the Ace Policy reads:
1. Insuring Agreement.
a. We will pay those sums that the insured become legally obligated to pay as damages because of “bodily injury” or “property damage” to which this insurance applies. We will have the right and duty to defend any “suit” seeking those damages . . .
b. this insurance applies to “bodily injury” and “property damage” only if:
(1) The “bodily injury” and “property damage” is caused by an “occurrence” that takes place in the “coverage territory”; . . .
The Ace Policy further provides, in part, as follows: Other Insurance
b. Excess Insurance
This Insurance is excess of any other insurance, whether primary, excess, contingent or on any other basis:
When this insurance is excess over other insurance, we will have no duty under Coverage A, B, D or E to defend any claim or “suit” that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured’s rights against those other insurers.
Pursuant to its policy, Ace USA agreed to provide, and has provided, Massport’s defense in the Bussell Action. Ace USA, however, notified Massport that it believes that it is only required to provide Massport with “excess” coverage, and is not required to provide “primary” insurance to defend and indemnify Massport in the Bussell Action. Ace USA notified Massport that although it is providing a defense for Massport in the Bussell Action, it reserves its rights to withdraw its defense in the future.
DISCUSSION
Underwriters, in its motion, seeks summary judgment on the issue of whether there is any duty to defend Massport in the OCIP Policy. Massport, in its motion, along with Ace USA in its cross motion, seek a determination as to which insurerUnderwriters on the OCIP Policy or Ace USA on the Ace Policyprovides primary coverage for Massport in connection with the Bussell Action.
Summary judgment is granted where there are no issues of genuine material fact, and the moving pariy is entitled to judgment as a matter of law. Glidden v. Maglio, 430 Mass. 694, 696 (2000); Hakim v. Massachusetts Insurers’ Insolvency Fund, 424 Mass. 275, 281 (1997); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no triable issue of fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
Here, there are dueling motions, such that both Underwriters and Massport, the latter with some support from Ace USA, although for quite different reasons, argue that there are no material facts in dispute and that, consequently, their respective motions should be allowed. Underwriters claims that the Court can, and should, rule in its favor, based solely upon an interpretation of the language of its OCIP Policy and the setting in which it exists. Massport and Ace USA make essentially the same argument, but arrive at different results.
The Court must look first at the language of the contracts between the moving parties. Those contracts are the OCIP and Ace USA policies. If the answer can be found in those policies, then the Court should go no further in the absence of some basis to modify or change the requirements of the policies.
The interpretation of an unambiguous agreement or policy is an issue of law for the Court. Policy *591 language must be construed in its usual and ordinary sense. 116 Commonwealth Condominium Trust v. Aetna Cas. & Surety Co., 433 Mass. 373, 376 (2001); Citation Ins. Co. v. Gomez, 426 Mass. 379, 381 (1998). A policy provision is ambiguous “only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one." Citation Ins. Co., supra, 426 Mass, at 381. The mere fact that parties disagree on the proper construction of policy language, however, does not necessarily establish ambiguity. Lumbermans Mut. Cas. Co. v. Offices Unlimited, Inc., 419 Mass. 462, 466 (1995).
“The object of the court is to construe the [policy] as a whole, in a reasonable and practical way, consistent with its language, background and purpose.” USM Corp. v. Arthur D. Little Systems, Inc., 28 Mass.App.Ct. 108, 116 (1989). The Court must act in a way to give effect to the policies as rational business instruments in order to cany out the intent of the parties. Starr v. Fordham, 420 Mass. 178, 192 (1990). Even in the case of an ambiguous agreement, interpretation is a matter of law for the Court except insofar as it may turn on facts in genuine dispute. Gross v. Prudential Ins. Co. of America, Inc., 48 Mass.App.Ct. 115, 119 (1999).
Justice, common sense and the probable intention of the parties upon consideration of the words in question are guides to the construction of a written contract. City of Haverhill v. George Brox, Inc., 47 Mass.App.Ct. 717, 720 (1999).
The Court will first address the issue of Underwriters’ duty to defend under the OCIP Policy and then will determine, to the extent it can at this time, the question of which carrier is primary and which is excess.

Duty to Defend Under the OCIP Policy

The duty to provide a defense under an insurance policy does not exist in the common law. Rather, it is contractual in nature. Thus, the language of the policy is controlling. See, e.g., B&D Appraisals v. Gaudette Machinery Movers, Inc., 752 F.Sup. 554, 556 (D.R.I. 1990).
The language in the OCIP Policy that controls reads as follows; “No liability shall be admitted and no admission, arrangement, offer, promise or payment shall be made by the Assured without the written consent of Underwriters, who shall be entitled, if they so desire, to take over and conduct in the name of the Assured the defence of any claim.” (Emphasis added.) This language is not complicated, not ambiguous and not difficult to understand. Underwriters has the option, if it so desires, to assume the defense of the Bussell Action, but it does not have a duty to do so. See, e.g., City of Burlington v. Arthur J. Gallagher & Co., 944 F.Sup. 333, 335-37 (D.Vt. 1996); City of Peoria v. Underwriters at Lloyd’s London, Unincorporated, 290 F.Sup. 890 (S.D.Ill. 1968).
Massport argues that the implied covenant of good faith and fair dealing ought to be applied here, suggesting that Underwriter’s refusal to defend is unfair and inappropriate. This Court disagrees. The implied covenant cannot be used to re-write the plain language of the OCIP Policy.
Nor can the doctrine of estoppel be utilized here to force a defense by Underwriters. Nothing is shown in the motion papers that there was any action by Underwriters that falls within the three elements required for an estoppel claim. See Clickner v. City of Lowell 422 Mass. 539, 544 (1996).
Underwriters’ motion for summary judgment must be allowed.

Which Carrier Is Primary

Clearly one of the two policies in issue must provide primary coverage. Underwriters argues that the time has not yet arrived to determine the indemnity obligations of either itself or Ace USA because the Bussell Action is not yet resolved.
This Court, however, sees a real need to sort out this issue, if possible, because one of the ways in which Bussell may be resolved against Massport is by pretrial settlement. In order to facilitate such settlement, the parties need to know as much as they can about which carrier will be obligated to pay the first dollar of liability coverage.
Unless Bussell is tried to a conclusion it will not be absolutely possible to determine whether either the Ace USA Policy or the OCIP Policy will be required to provide indemnification. However, if either policy was the only one extant there is a real possibility that it would be responsible for indemnity to Massport in the Bussell Action. Both policies provide coverage for claims of bodily injury.
Both the Ace USA Policy and the OCIP Policy contain “other insurance” clauses. The Ace USA Policy’s clause reads;
This Insurance is excess of any other insurance, whether primary, excess, contingent or on any other basis:
When this insurance is excess over other insurance, we will have no duty under Coverage A, B, D or E to defend any claim or “suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured’s rights against those other insurers.
The OCIP Policy’s other insurance clause reads:
If any claim under this policy is also covered in whole or in part by other insurance, the liability of Underwriters shall be limited to their rateable proportion of such claim.
The Supreme Judicial Court entered “into the morass created by the existence of overlapping in *592 surance and ‘other insurance’ clauses” in Mission Ins. Co. v. United States Fire Ins. Co., 401 Mass. 492, 495 (1988). There, Chief Justice Hennessey said:
While this court has not decided any cases directly involving a conflict between excess clauses, we have faced related cases and cases in the general insurance context. Our approach in these cases, consistent with the modem approach to conflicting “other insurance” clauses, has been to attempt to effectuate the language of the policies at issue.
Id. at 496.
This Court will follow the teaching in Mission. The Ace USA Policy’s “other insurance” provisions clearly create for it excess insurer status. The OCIP Policy, on the other hand, speaks of liability being limited to Underwriters’ pro rata share of the liability of the insured.
“In general, there are three types of ‘other insurance’ clausespro rata, escape, and excess.” Id. at 495, citing 8A J.A. Appleman, Insurance Law and Practice, Sec. 4906, at 345-50 (rev. ed. 1981).
Pro rata clauses provide that, if other insurance is available to the insured, the policy containing the pro rata clause will contribute to the loss in the proportion that its policy limit bears to the total limit of all available policies. Escape clauses provide that, if there is other insurance available to the insured, the policy containing the escape clause will pay no benefits. Excess clauses provide that, if there is other insurance available to the insured, the policy containing the excess clause will pay no benefits until such other insurance is exhausted.
Id. at 495, n.3.
This Court is cognizant of the difficulty in determining whether an insurance carrier has a duty to indemnify a loss under a particular circumstance until completion of the trial of the case. See, e.g., Newell-Blais Post No. 443, Veterans of Foreign Wars of U.S., Inc. v. Shelby Mut. Ins. Co., 396 Mass. 633 (1986). “The [carrier] is not necessarily bound to satisfy the potential judgment against [the insured], since the facts at trial may fall within a policy exclusion, or [the insured] may fail to satisfy certain conditions of the insurance agreement.” Id. at 638.
Consequently, the resolution of the motions by Massport and Ace USA must be much more tentative than on the earlier motion of Underwriters regarding the duty to defend. Thus, while the Ace USA Policy is clearly excess, if the ultimate result of the Bussell Action is grounded upon something not covered by the OCIP Policy, there will be nothing for Ace USA to be in excess of. Whether there is overlapping coverage remains to be seen. See, e.g., Liquor Liability Joint Underwriting Ass’n v. Hermitage Ins. Co., 419 Mass. 316, 324 n.6 (1994).
ORDER
For the foregoing reasons: Underwriters’ Motion for Partial Summary Judgment That No Duty to Defend Exists Under the OCIP Policy (Paper #29) is ALLOWED; and Massachusetts Port Authority’s Motion for Summary Judgment on Count IV (Paper #29) and Ace USA’s Cross Motion for Summary Judgment on Count IV (Paper #33) are ALLOWED, but only to the limited extent that if there is overlapping coverage for Massport in the Ace USA Policy and the OCIP Policy in connection with the ultimate resolution of the Bus-sell Action, then the Ace USA Policy will be excess to the OCIP Policy with regard to the obligation of indemnification of Massport.