NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-1890                                        Appeals Court

PREFERRED MUTUAL INSURANCE COMPANY  vs.  VERMONT MUTUAL
INSURANCE COMPANY & others.[1]


No. 13-P-1890.

Middlesex.       October 7, 2014. - June 17, 2015.

Present:  Cohen, Wolohojian, & Blake, JJ.


Insurance, Coverage, Insurer's obligation to defend, Defense of
     proceedings against insured, Homeowner's insurance,
     Business exclusion, Excess Liability Insurance.  Contract,
     Insurance.  Practice, Civil, Summary judgment.  Indemnity.



Civil action commenced in the Superior Court Department on
March 30, 2012.

The case was heard by Dennis J. Curran, J., on motions for
summary judgment, and the entry of separate and final judgment
was ordered by him.


Peter C. Kober for Vermont Mutual Insurance Company.
Robert A. Curley, Jr., for the plaintiff.


COHEN, J.  This insurance dispute arises from an accident

in which Richard Dubois was injured while working at a residence

in Medford.  The residence was owned by Francis and Eileen

---

[1] Joseph Munyon, Richard Dubois, and Laurie Dubois.

Munyon, who lived there with their adult son, Joseph.[2] In October, 2009, the Munyons undertook to renovate their second-floor bathroom and hired Dubois's employer as the plumbing contractor. On Dubois's first day on the job, he removed old copper piping and other debris from the bathroom and attempted to throw it into the backyard from a second-floor deck. Unbeknownst to Dubois, on the previous day, Joseph had unfastened the porch railing in order to push the old cast iron bathtub into the backyard; but when he finished, he left the railing in an upright position so it appeared to be securely in place. While leaning against the unsecured railing, Dubois fell to the ground and was injured. Dubois and his wife later filed suit against Joseph and his parents, alleging that they were liable for Dubois's personal injuries and his wife's loss of consortium.

At the time of the accident, Francis and Eileen were the named insureds under a homeowner's policy issued by the defendant, Vermont Mutual Insurance Company (Vermont). In addition, by virtue of his status as a resident relative, Joseph, too, was an insured under the Vermont policy. Independently, Joseph was the named insured under a commercial lines policy issued by the plaintiff, Preferred Mutual Insurance

---

[2] As these individuals have the same last name, we refer to them individually by their first names.

Company (Preferred), in connection with Joseph's business as a self-employed licensed electrician. Both Vermont and Preferred were notified of the Duboises' claims. Vermont assumed the defense of Francis and Eileen, but refused to defend Joseph. Preferred undertook to defend Joseph, but did so under a reservation of rights. As discussed below, the coverage issues raised by the insurers related to Joseph's role in the renovation project and whether he was acting in a personal or business capacity.

The Dubois lawsuit ultimately was successful. After a trial in 2013, a jury found Francis, Eileen, and Joseph liable for Dubois's personal injuries and his wife's loss of consortium. Judgment entered for Dubois in the amount of $226,218.49, and for his wife in the amount of $12,567.69. Vermont paid the judgments in their entirety on behalf of Francis and Eileen, who subsequently obtained a judgment against Joseph for contribution.[3]

While the underlying case was pending, Preferred filed the instant action, naming Vermont, Joseph, and the Duboises as defendants. In count I of its complaint, Preferred sought a judgment declaring that its policy did not afford coverage for the underlying claims and that Vermont was obliged to defend and

---

[3] The parents (collectively) and Joseph were determined to be joint tortfeasors, each responsible for fifty percent of the judgment.

indemnify Joseph.  In count II, Preferred asserted an equitable claim against Vermont for fifty percent of all defense costs incurred by Preferred on Joseph's behalf.  Preferred and Vermont filed cross motions for summary judgment, which were decided after the underlying case had been concluded.  After a hearing, a judge of the Superior Court allowed Preferred's motion and denied Vermont's motion.  The judge ruled that Preferred had no duty to defend or indemnify; that Vermont had both a duty to defend and a duty to indemnify; and that Vermont was required to reimburse the entirety of the defense costs incurred by Preferred in defending Joseph.

Vermont now appeals from a separate and final judgment that entered as a result of these rulings.[4]  After de novo review, see Norfolk & Dedham Mut. Fire Ins. Co. v. Cleary Consultants, Inc., 81 Mass. App. Ct. 40, 47 (2011), we affirm in part and vacate in part.

1.  Relevant policy provisions.  a. Vermont policy.  The liability coverage section of the Vermont policy contains a so-called "business pursuits exclusion" stating that coverage does not apply to bodily injury "[a]rising out of or in connection with a business engaged in by an insured."  In the "Definitions"

---

[4] The motion judge ruled that issues of fact remained to be decided as to counterclaims brought against Vermont by the underlying tort plaintiffs pursuant to G. L. c. 93A and G. L. c. 176D.  Those claims remain pending in the trial court.

5

section of the policy, "business" is defined to include "trade, profession or occupation."

The "Conditions" section of the Vermont policy includes an "other insurance" clause, providing that "[t]his insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy."

b. <u>Preferred policy</u>. The "Commercial General Liability Coverage Part" of the Preferred policy has its own "Declarations" page, which identifies the named insured, Joseph, as an "individual," and the business of the named insured as: "electrician." The policy later provides, in paragraph 1(a) of section II: "If you are designated in the Declarations as [a]n individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner."

The "other insurance" clause in the Preferred policy provides, with exceptions not relevant here, that the policy is "primary" insurance and will provide coverage with any other "primary" policy "by limits," if (as in the case of the Vermont policy) the other insurer does not state that it will contribute by equal shares. The clause further explains that "[u]nder this method, each insurer's share is based on the ratio of its

applicable limit of insurance to the total applicable limits of insurance of all insurers."

2.  Duty to defend.  "It is settled that an insurer's duty to defend is independent from, and broader than, its duty to indemnify."  Metropolitan Property & Cas. Ins. Co. v. Morrison, 460 Mass. 352, 357 (2011), quoting from A.W. Chesterton Co. v. Massachusetts Insurers Insolvency Fund, 445 Mass. 502, 527 (2005).  "An insurer has a duty to defend an insured when the allegations in a complaint are reasonably susceptible of an interpretation that states or roughly sketches a claim covered by the policy terms.  The duty to defend is determined based on the facts alleged in the complaint, and on facts known or readily knowable by the insurer that may aid in its interpretation of the allegations in the complaint.  In order for the duty of defense to arise, the underlying complaint need only show, through general allegations, a possibility that the liability claim falls within the insurance coverage.  There is no requirement that the facts alleged in the complaint specifically and unequivocally make out a claim within the coverage.  However, when the allegations in the underlying complaint lie expressly outside the policy coverage and its purpose, the insurer is relieved of the duty to investigate or defend the claimant."  Billings v. Commerce Ins. Co., 458 Mass.

194, 200-201 (2010) (quotations, citations, and footnotes omitted).

Relevant here, the underlying complaint alleges that "Joseph . . . is a licensed electrician . . . who resides at [the Munyon residence] and has, at all times relevant to this action, been in charge of the contracting work conducted [there]." The complaint alleges further that Francis and Eileen had Joseph "serve as their general contractor," and that Joseph entered into a subcontract with Dubois's employer for the performance of the plumbing work on the second-floor bathroom. The complaint also describes Joseph as the "construction supervisor" for the renovation work. The complaint further alleges that the Munyons unhinged the railing of the second-floor deck in order to dispose of the old bathtub, left it in place so it appeared to be securely fastened, and failed to warn Dubois of its condition.

a. Vermont's duty to defend. Based upon the references to Joseph's occupation and his role in supervising the project, Vermont contends that its business pursuits exclusion negates the coverage that otherwise would inure to Joseph as an insured under his parents' homeowner's policy. The argument is without merit, however, because the allegations of the complaint, especially when read in light of Vermont's knowledge that Joseph was the son of the policyholders and that the residence being

renovated was their mutual home, did not conclusively establish that Dubois's injuries were ones "arising out of" or "in connection with" Joseph's business.

Although there are a few Massachusetts cases involving some form of business pursuits exclusion in a homeowner's policy,[5] our appellate courts have not had occasion to articulate general, guiding principles for determining when an activity arises out of or in connection with the insured's business.  In other States, there is widespread agreement that a two-prong functional test should be used.  The first element of the test is "continuity" -- that is, the activity in question must be one in which the insured regularly engages as a means of livelihood; the second element is "profit motive" -- that is, the purpose of the activity must be to obtain monetary gain.  See 5 New Appleman on Insurance Law Library Edition § 53.06[2][d][i] (2014); 9A Couch on Insurance § 128.13 (3d ed. 2006); 3 Windt, Insurance Claims & Disputes § 11:15 (6th ed. 2013).  See also Springer v. Erie Ins. Exch., 439 Md. 142, 162-164 (2014) (surveying cases).  The two-prong test is so widely utilized that we accept it as the norm and employ it here.

---

[5] See Worcester Ins. Co. v. Fells Acres Day Sch., Inc., 408 Mass. 393, 412 (1990); Commerce Ins. Co. v. Finnell, 41 Mass. App. Ct. 701, 702-703 (1996); Metropolitan Property & Cas. Ins. Co. v. Fitchburg Mut. Ins. Co., 58 Mass. App. Ct. 818, 820-823 (2003).

Insofar as the first prong is concerned, the underlying complaint identifies Joseph as a licensed electrician; however, the complaint leaves uncertain whether he participated in the bathroom renovation in that capacity. The complaint specifically alleges that Joseph served as a general contractor, contracted with others, and oversaw the work. It also alleges that in conjunction with disposing of the old bathtub, he unhinged the railing of the second-floor deck, left it in place, and failed to warn Dubois of its condition. However, there is no indication in the complaint that his alleged supervisory or disposal activities were ones in which he regularly engaged in connection with his means of livelihood.

Insofar as the second prong is concerned, the complaint does not indicate whether Joseph's participation in the renovation project was motivated by profit. Especially when considered in light of the extrinsic facts known to Vermont, the complaint leaves it entirely plausible that Joseph contributed his labor out of a desire to help his parents and improve the residence in which they all lived.

"It is the insurer who bears the burden of proving the applicability of an exclusion. In order for an exclusion to negate an insurer's duty to defend ab initio, the facts alleged in the third-party complaint must establish that the exclusion applies to all potential liability as matter of law. If the

claimant's factual allegations are susceptible of an interpretation that leaves room for coverage, or are insufficiently developed, the insurer must defend unless and until it demonstrates with conclusive effect on the third party [i.e., the claimant] that as matter of fact -- as distinguished from the appearances of the complaint and policy -- the third party cannot establish a claim within the insurance." Norfolk & Dedham Mut. Fire Ins. Co. v. Cleary Consultants, Inc., 81 Mass. App. Ct. at 52 (quotations and citations omitted).  Because the facts alleged in the Dubois complaint do not establish that the business pursuits exclusion applies to all potential liability as matter of law, Vermont had a duty to defend and should not have disclaimed outright.

b.  Preferred's duty to defend.  Vermont argues in the alternative that even if it had a duty to defend, so did Preferred, and, by operation of the policies' "other insurance" clauses, Preferred was required to shoulder that burden alone. Unlike the motion judge, we agree with Vermont that Preferred also had a duty to defend, because the claims asserted in the complaint are potentially within the scope of Preferred's coverage.  However, as explained in the following section, we reject Vermont's position that the operation of the "other insurance" clauses relieved Vermont of its own, independent duty to defend.

The existence of Preferred's duty to defend turns on the allegations of the complaint as they relate to the policy's description of the risks covered. Joseph is identified in the "Declarations" as an "individual," and, pursuant to the provisions of section II, paragraph (1)(a), is an insured "only with respect to the conduct of a business of which [he is] the sole owner." That business is identified in the "Declarations" as "electrician." The underlying complaint alleges that Joseph is an electrician, who "has . . . been in charge of" the renovation project. Although the complaint later characterizes Joseph as a "general contractor," that characterization is not mutually exclusive with his performing services as an electrician. The allegations do not negate the possibility that he was engaged to work on the renovations as an electrician, and that his supervisory activities and/or his removal and disposal of the bathtub, were ancillary to his electrical work and performed in the conduct of his business. Because the allegations of the complaint do not "lie expressly outside the policy coverage and its purpose," Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 394-395 (2003), Preferred appropriately chose to defend under a reservation of rights and to file a declaratory judgment action as a means of determining its obligations.

c.  Effect of "other insurance" clauses.  Because the motion judge ruled that only Vermont had a duty to defend, he did not reach the additional argument made by Vermont concerning the operation of the policies' respective "other insurance" clauses.  Vermont correctly observes that Preferred's clause is a "pro rata clause" (providing that the policy will contribute to the loss in the proportion that its policy limit bears to the total limit of all available policies), while Vermont's clause is an "excess clause" (providing that the policy will not contribute to the loss until other available insurance is exhausted).  See Mission Ins. Co. v. United States Fire Ins. Co., 401 Mass. 492, 495 n.3 (1988).  Vermont also observes that when an excess clause competes with a pro rata clause, the excess clause ordinarily will be given effect.  See id. at 496. On this basis, Vermont takes the position that even though each policy is designed as primary insurance and each provides the insured with defense coverage separate and apart from indemnity coverage, the operation of the "other insurance" clauses transforms the Vermont policy into an "excess policy" and relieves it of its contractual duty to defend.

This argument reflects a fundamental misunderstanding of the nature and purpose of "other insurance" clauses that, like the ones involved here, make no reference to the insurers'

defense obligations.[6]  Such clauses are provisions "designed to establish a policy's relationship with other policies covering a loss."  Id. at 495 (emphasis supplied).  As one commentator has emphasized, they "speak only to loss allocation.  In the liability insurance context, 'losses' are either covered judgments or settlements on the behalf of insureds.  'Other insurance' clauses thus relate only to insurers' indemnity obligations, and they do not even purport to address the allocation or apportionment of defense costs."  Richmond, Issues and Problems in "Other Insurance," Multiple Insurance, and Self-Insurance, 22 Pepp. L. Rev. 1373, 1429 (1995) (emphasis supplied).

Put another way, regardless of how the "other insurance" clauses may have operated in the event that both Vermont and Preferred were required to indemnify Joseph, they have no bearing on Vermont's concurrent duty to defend him.  See American Fid. & Cas. Co. v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co., 280 F.2d 453, 458-460 (5th Cir. 1960).  When a primary policy is not a true excess policy, but merely "is deemed 'excess' by virtue of other collectible insurance, the limiting language is directed to its obligation to contribute to

---

[6] For extensive discussion of the operation and enforceability of an "other insurance" clause expressly purporting to relieve an insurer of its defense obligation if there is another insurer with a duty to defend, see Nautilus Ins. Co. v. Lexington Ins. Co., 132 Haw. 283, 295-297 (2014).

a settlement or judgment, not to its duty to defend." GMAC v. Nationwide Ins. Co., 4 N.Y.3d 451, 456 (2005).

3. Duty to indemnify. The duty to indemnify turns on a different universe of facts -- those contained in the summary judgment record, which includes, among other things, the parties' agreed upon facts and deposition testimony.[7]

a. Vermont. After consideration of the summary judgment record in the light most favorable to Vermont, we conclude, as matter of law, that Vermont cannot carry its burden of proving the applicability of its business pursuits exclusion. As to the continuity prong of the two-part test, the record does not permit the conclusion that Dubois's injuries arose from any activities in which Joseph regularly engaged as a means of livelihood. In response to Preferred's statement of facts, Vermont admitted that Joseph did not act as a general contractor or construction supervisor on the job, he was not licensed as a construction supervisor, he never ran a business as a construction supervisor, and he never earned money as a construction supervisor. So far as the record reveals, the only business in which Joseph was continually engaged was his business as an electrician, and the record is devoid of evidence

---

[7] We view that record under familiar summary judgment standards. See generally Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., supra, at 393-394.

that Dubois's injuries were connected with or incidental to any work performed by Joseph in that capacity.

As to the "for profit" prong, Vermont argues that a profit motive may be inferred from evidence that Joseph's parents forgave a few hundred dollars of an approximately $2,000 debt that he owed them for helping him pay his taxes. Vermont also argues that Joseph expected to earn goodwill by working with other tradesmen who might recommend him in the future. We think that this showing is far too thin to meet Vermont's burden of demonstrating the second prong; regardless, Vermont must satisfy both prongs for the business pursuits exclusion to apply, and this it cannot do.

b. Preferred. Because the question of Preferred's duty to indemnify turns on the coverage granting provisions of its policy and not upon an exclusion, it is not Preferred's burden to negate coverage; it is the burden of the party seeking to establish coverage (in this case Vermont) to show that the claim is within the policy. See Markline Co. v. Travelers Ins. Co., 384 Mass. 139, 140 (1981). After consideration of the summary judgment record, we conclude, as matter of law, that Vermont cannot demonstrate that the Preferred policy affords coverage to Joseph. The Preferred policy covered Joseph only "with respect to the conduct of a business of which [he was] the sole owner,"

and that business was designated as "electrician."[8]  Here, the record reveals no facts from which it reasonably may be inferred that Joseph was conducting his business as an electrician at any time relevant to the occurrence of the accident.

4. <u>Conclusion</u>.  The judgment as to count I of Preferred's complaint is affirmed insofar as the judgement declared that: (1) Vermont had a duty to defend Joseph in the underlying action; (2) Vermont had a duty to indemnify Joseph; and (3) Preferred had no duty to indemnify Joseph.  However, insofar as the judgment on count I declared that Preferred had no duty to defend Joseph, the judgment is vacated and shall be replaced by a declaration that Preferred had a duty to defend Joseph.  The judgment as to count II is vacated and shall be replaced by a declaration that Preferred is entitled to equitable contribution and that Vermont shall reimburse fifty percent of the defense

---

[8] Vermont argues that a schedule appended to the Preferred policy, which identifies "hazards" by location and description, may be read to suggest that Joseph is covered as a general contractor.  Passing whether the schedule forms a part of the policy, we think that Vermont's interpretation of the schedule is unreasonable.  More fundamentally, the summary judgment record contains an admission by Vermont, in response to Preferred's statement of facts, that Joseph did not serve as a general contractor on this project.  Accordingly, Vermont cannot contend that Joseph is entitled to coverage on that basis.

costs expended by Preferred in defending Joseph.[9]

<u>So ordered</u>.

---

[9] Unlike Vermont, Preferred commendably assumed Joseph's defense under a reservation of its rights and brought a declaratory judgment action as a means to demonstrate with conclusive effect on the Duboises, as well as Joseph, that the underlying claims were outside the scope of the Preferred policy. That does not mean, however, that Preferred is entitled to be fully reimbursed by Vermont for the fees and costs incurred in providing Joseph with a defense. The pleadings reflect that Preferred sought only to be reimbursed fifty percent; furthermore, both parties represented at oral argument that if we were to conclude that both insurers had a duty to defend, the proper method of allocation in this case would be for them to share the defense costs equally.