CLARENDON NATIONAL INSURANCE COMPANY vs. ARBELLA
MUTUAL INSURANCE COMPANY.

No. 02-P-230.

Norfolk. October 8, 2003. - February 24, 2004.

Present: LENK, SMITH, & KAFKER, JJ.

*Insurance,* Motor vehicle insurance. *Conflict of Laws.*

In a civil action in which the plaintiff insurer (which issued a "garage policy"
to a Rhode Island car dealership to insure "loaner" cars that the dealer-
ship's customers borrowed while their cars were being repaired, which
policy contained a clause that provided that a dealership customer driving
a loaner car did not qualify as an "insured" under the policy unless the
customer had no other available insurance, whether primary, excess, or
contingent) sought a judgment declaring that the defendant insurer (the is-
suer of a motor vehicle insurance policy to a Massachusetts resident,
which policy contained an excess insurance clause providing that, if the
insured was operating an automobile she did not own at the time of the ac-
cident, the owner's automobile insurance must pay its limits before the
defendant would pay) was the primary insurer liable for any claims arising
out of an automobile accident in Massachusetts that the Massachusetts
insured caused while driving a loaner car from the dealership, the judge
properly applied Massachusetts law rather than Rhode Island law to
interpret the two insurance policy clauses, where the insured risk could not
be principally located in one State, and where Massachusetts had the most
significant relationship to the issue, in that application of Massachusetts
law would better serve to protect the parties' justified expectations under
the contracts and would further the purposes underlying both States'
contract rules by giving effect to the language of both insurance agree-
ments at issue while avoiding an absence of insurance coverage; moreover,
application of Massachusetts law in this situation was not contrary to
public policy. [494-501]

CIVIL ACTION commenced in the Superior Court Department on
March 24, 2000.

The case was heard by *Janet L. Sanders,* J., on motions for
summary judgment.

*John D. Boyle* for the defendant.

*Darrel C. Waugh* (*Edward J. Barshak* with him) for the plaintiff.

LENK, J. The defendant Arbella Mutual Insurance Company (Arbella) appeals from an entry of summary judgment in favor of the plaintiff Clarendon National Insurance Company (Clarendon) declaring that Arbella was the primary insurer liable for any claims arising out of an October 16, 1998, automobile accident. The sole issue on appeal is whether the judge erred in applying Massachusetts law rather than Rhode Island law to interpret two insurance clauses.

*Background.* The undisputed facts are these. Bernice Michel, a resident of Mendon, Massachusetts, and a duly licensed Massachusetts driver, owned a car and was insured under a Massachusetts automobile insurance policy issued by Arbella. Arbella is licensed to provide such insurance in Massachusetts, where it has a usual place of business. Michel's policy coverage included optional bodily injury limits of $100,000 per person and $300,000 per accident.[1] On October 16, 1998, Michel took her car to Anchor Subaru, LLC (Anchor Subaru), a car dealership in North Smithfield, Rhode Island. Michel borrowed a "loaner" car from Anchor Subaru to drive while her own car was being repaired. Anchor Subaru insured such cars through Clarendon, an insurance company licensed to provide insurance in Rhode Island, with a usual place of business in New York. The insurance policy that Clarendon issued to Anchor Subaru was a so-called "garage policy."

While driving the loaner car that day, Michel caused a four-car automobile accident in Medfield, Massachusetts. One of the other drivers involved in the accident, James Castleberry, a Massachusetts resident, sued Michel to recover damages for personal injuries resulting from the collision. The suit was settled for $55,000; Arbella paid $50,000 and Clarendon paid $5,000.

Clarendon then filed a complaint pursuant to G. L. c. 231A, § 1, essentially seeking a judgment declaring that Arbella was

[1]In October, 1998, G. L. c. 90, § 34A, required that a policy of motor vehicle liability insurance issued in Massachusetts provide at least $20,000 for injury or death of any one person and at least $40,000 per accident resulting in injury or death of more than one person.

the primary insurer for the automobile accident of October 16, 1998, and that as primary insurer, Arbella was obligated to defend and pay any claim against Michel arising out of the accident. Clarendon also sought a declaration that it did not have any duty to defend or indemnify Michel. Arbella counterclaimed, seeking in substance a declaration that Clarendon had a duty to defend Michel that was concurrent with Arbella's duty, and that Clarendon was required to make a pro rata contribution toward any settlement or fees arising out of the October 16, 1998, accident. Both parties moved for summary judgment pursuant to Mass.R.Civ.P. 56, 365 Mass. 824 (1974).

*Discussion.* The only issue before us is whether Massachusetts law or Rhode Island law should be applied to determine the outcome of the interaction between two "other insurance" clauses: the excess insurance clause of the Arbella policy and the "super-escape" clause of the Clarendon policy. The Arbella policy contained an excess insurance clause providing that, if the insured was operating an automobile "she [did] not own at the time of the accident, the owner's auto insurance must pay its limits before we pay." The Clarendon garage policy contained a super-escape clause,[2] which provided that a dealership customer driving a loaner car did not qualify as an "insured" under the policy unless the customer had "no other available insurance (whether primary, excess, or contingent)." The excess clause in the Arbella policy withholds coverage from an insured until the other vehicle owner's insurance pays to its limits. The Clarendon super-escape clause denies coverage to a would-be insured where other insurance, including excess insurance, is available to her.

The parties agree that the choice of law issue is outcome-determinative. If Rhode Island law applies, Clarendon will be responsible for a pro rata share of the liability arising out of the October 16, 1998, accident. In *Brown v. Travelers Ins. Co.*, 610 A.2d 127, 130 (R.I. 1992), the Supreme Court of Rhode Island considered the consequence of a conflict between a garage policy super-escape clause and an excess clause and required both insurers to share the loss on a pro rata basis. That court

[2]See 8A Appleman, Insurance Law & Practice § 4906, at 349-351 (rev. ed. 1981).

understood the language of each insurance clause (super-escape and excess) to nullify the other, effectuating a "total forfeiture of coverage . . . a result which cannot be permitted to occur." *Ibid.* In adopting its rule of pro rata liability, the Supreme Court of Rhode Island sought to avoid the forfeiture of coverage and to remove "ammunition" from the "battle of the drafters" of insurance policies. *Ibid.*

If, on the other hand, Massachusetts law applies, Arbella will bear full responsibility (within coverage limits) for liability arising out of the October 16, 1998, accident. In *United States Fid. & Guar. Co. v. Hanover Ins. Co.*, 417 Mass. 651, 656-657 (1994), the Supreme Judicial Court considered the interplay between an excess clause and a garage policy super-escape clause and concluded that the super-escape clause "brings into effect the excess coverage" and causes the insurer whose policy contains the excess clause to bear liability. Because it deemed policies containing super-escape clauses to be well suited to the needs of an insured and insurer in the circumstances of a car dealership, the court held that effect should be given to such clauses. See *id.* at 659 ("The garage owner and the insurer, therefore . . . could anticipate that coverage for liability arising out of someone driving a nonowned vehicle might declare itself 'excess.' In the face of these facts, they could reasonably enter a contract for insurance coverage . . . limiting the coverage provided to customers based on the realities of a garage operation"). The Supreme Judicial Court acknowledged the division between jurisdictions on the question of how to resolve a conflict between a super-escape clause and an excess clause. *Id.* at 655. In choosing to effectuate the language of both policies, the Supreme Judicial Court explicitly rejected the approach of the Supreme Court of Rhode Island. *Id.*, citing *Brown v. Travelers Ins. Co., supra.*

The motion judge was correct in using the conflict-of-laws rules of Massachusetts, the forum State, in order to determine which State's law is applicable. Massachusetts has adopted a functional choice-of-law approach. *Bushkin Assocs., Inc. v. Raytheon Co.*, 393 Mass. 622, 631 (1985) ("[We] seek instead a functional choice-of-law approach that responds to the interests of the parties, the States involved, and the interstate system as a

whole"). The Massachusetts functional approach is explicitly guided by the Restatement (Second) of Conflict of Laws (1971). *Bushkin Assocs., Inc.* v. *Raytheon Co.*, 393 Mass. at 632. *Cosme* v. *Whitin Mach. Works, Inc.*, 417 Mass. 643, 646 (1994). *Kahn* v. *Royal Ins. Co.*, 429 Mass. 572, 576 (1999).

Three sections of the Restatement (Second) of Conflict of Laws (1971) are relevant to our analysis: section 193, which sets forth choice of law principles applicable to disputes concerning insurance contracts; section 188, which sets forth principles pertinent to disputes involving questions of contract; and section 6, which is a general statement of principles underlying all rules regarding choice of law. The Restatement is structured such that, when faced, as here, with a conflict of laws question involving insurance contracts, the first step is to ascertain whether the provisions of § 193 will resolve the matter; if not, the next step is to employ the principles set forth in § 188 to ascertain which State has a more significant relationship to the issues, using in that analysis the factors set forth in § 6.

Section 193 provides that the rights created by a contract of casualty insurance are to be determined by the local law of the State that the parties to the insurance contract understood would be the principal location of the insured risk during the term of the policy, unless some other State has a more significant relationship under the principles of § 6. Restatement (Second) of Conflict of Laws § 193 (1971). The principal location of the insured risk is emphasized because location often has an "intimate bearing" on the nature of the risk, and may determine the terms and conditions of the contract. *Id.* § 193 comment c. Therefore, in our analysis of which State's law to apply, we are to give greatest weight to the location of the insured risk, provided that the risk can be located principally in one State. *Id.* § 193 comment b.

Comment b to § 193 suggests that, in the case of an automobile liability policy, the parties ordinarily know beforehand where the automobile will be garaged and that the garaged location is the principal location of the insured risk. Anchor Subaru, the Rhode Island insured, and Clarendon, the Rhode Island insurer, knew that the loaner car would be principally garaged in Rhode Island. That is not the end of the

matter, however, because Clarendon's is not the only relevant policy. Directly implicated here is the Arbella policy and, therefore, the risk insured thereby. Insofar as that insured risk — primarily that posed by Michel's car — was located principally in Massachusetts, in deciding how to interpret the two policies we cannot locate risk principally in one State. Moreover, comment d to § 193 explains that, with an exception not relevant here, the local law of a State of "principal location" will not apply when a contract is invalid under the local law of the State of principal location but valid under the local law of another State with a close relationship to the transaction. *Id.* § 193 comment d. Clarendon's Rhode Island insurance policy contained a super-escape clause that was unenforceable as against an excess insurance clause under Rhode Island law, but enforceable under Massachusetts law.

Because we cannot locate the risk principally in one State and the Clarendon policy contains a provision invalid in Rhode Island but valid in Massachusetts, the principles set forth in § 193 do not settle the question of which State's law to apply to the matter at hand. Hence, we assess which State has the most significant relationship to the issue by employing the factors indicated in § 188 and § 6. See *id.* § 193 comment c.

Section 188 provides that the rights and duties of the parties, with respect to a contract issue, will be determined by the local law of the State which, as to that issue, has the most significant relationship to the transaction and to the parties under the principles of § 6.[3] Restatement (Second) of Conflict of Laws § 188 (1971). Section 188 suggests that particularly close attention be given to (1) the protection of the parties' justified expectations; and (2) the purpose sought to be achieved by the contract rules of the interested States (here, Massachusetts and Rhode Island) and the relation of each of these States to the parties and the transaction. See *id.* § 188 comments b, c.

---

[3]Restatement (Second) of Conflict of Laws § 6(2) (1971) provides seven factors relevant to the choice of applicable law: "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested [S]tates and the relative interests of those [S]tates in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied."

Protection of the justified expectations of the parties "is the basic policy underlying the field of contracts." *Id.* § 188 comment b. See *id.* § 6(2)(d), (e), quoted in note 3, *supra.* Comment b to § 188 emphasizes that parties to a contract expect that the provisions of the contract will be binding upon them. As to Arbella's justified expectations, it seems clear that Arbella would expect to be liable if a driver, whose car was insured under an Arbella Massachusetts policy containing an excess clause, were to cause an automobile accident while driving a loaner car insured under another Massachusetts insurer's garage policy that contains a super-escape clause. Massachusetts law is quite plain on this point. Clarendon's justified expectations, in contrast, are somewhat more equivocal. Clarendon may well have expected that the super-escape provision of its Rhode Island garage policy would trump an escape clause in some circumstances, but that expectation would not have been justified as against another Rhode Island policy containing an excess clause for, in Rhode Island, such provisions are nullified by operation of law. See *Ferreira* v. *Mello,* 811 A.2d 1175, 1177 (R.I. 2002). The protection of the parties' justified expectations, then, would seem to be better served by applying Massachusetts law.

Turning to the second significant factor, the purpose sought to be achieved by each interested State's contract rules, the purpose of the Massachusetts contract rule is to give effect to the language of both insurance agreements at issue. *United States Fid. & Guar. Co.* v. *Hanover Ins. Co.,* 417 Mass. at 655 ("[W]e follow the majority approach which seeks, whenever possible, to reconcile conflicting policy clauses based on the .sense and meaning of the terms in an effort to effectuate the language of the insuring agreements"). See *Mission Ins. Co.* v. *United States Fire Ins. Co.,* 401 Mass. 492, 496-497 (1988). The purpose of the Rhode Island contract rule is to prevent a total absence of insurance coverage and to avoid encouraging the "battle of the drafters." *Brown* v. *Travelers Ins. Co.,* 610 A.2d at 130 ("We do not wish to encourage the complication of insurance legerdemain at the expense of the policy holders' money or the courts' time").

Although Massachusetts and Rhode Island contract rules dif-

fer in this regard, purposes underlying both would nonetheless be furthered by applying Massachusetts law. See Restatement (Second) of Conflict of Laws § 188 comment c ("The purpose sought to be achieved by the contract rules of the potentially interested [S]tates, and the relation of these [S]tates to the transaction and the parties, are important factors to be considered in determining the [S]tate of most significant relationship"). The application of Massachusetts law would effectuate the language of both contracts while avoiding an absence of insurance coverage.[4] In contrast, only the purpose that the Rhode Island contract rule seeks to further would be served by applying Rhode Island law, since the language of both clauses would not be given effect. See *Hindson* v. *Allstate Ins. Co.*, 694 A.2d 682, 683 n.2 (R.I. 1997) ("Most recently in *Brown* v. *Travelers Insurance Co.*, 610 A.2d 127, 130 [R.I. 1992], we nullified conflicting 'escape' and 'excess' provisions and instead required the insurers to prorate their coverage of the loss"); *Ferreira* v. *Mello, supra.* The second factor, accordingly, is also better served by applying Massachusetts law.

At oral argument, however, counsel for Arbella suggested that important public policy interests of both States would best be served by applying Rhode Island law, which has the salutary effect of keeping more insurance coverage in play. It does this by requiring the pro rata apportionment of liability among insurers in accordance with the limits of their respective policies. *Ibid.* Pro rata apportionment means that the liability of the relevant insurers is based upon the coverage amount of each respective policy. See *Hindson* v. *Allstate Ins. Co.*, 694 A.2d at 685. Under pro rata apportionment, the insurance coverage available to the insured is the aggregate limit of all available policies. *Ibid.* If the Massachusetts rule is applied, only the one policy containing the excess clause defines the limit of available insurance.

Apart from the fact that Arbella does not appear to have

---

[4]To a degree, the Massachusetts approach diminishes the battle of the drafters by providing a rule of certain application in the particular case. On the other hand, insomuch as the Rhode Island rule deters the drafters by nullifying the clauses as drafted, that purpose is contrary to the Supreme Judicial Court's intent to effectuate the language of both contracts.

raised this contention below, it fails when considered on its merits. While assuring sufficient insurance coverage is undoubtedly an important concern of both States, Massachusetts has also determined that super-escape clauses, in the context of garage policies, are not contrary to public policy but are instead to be effectuated when possible.[5] There is nothing of record to suggest that the policies at issue here do not meet the legislatively determined minimum requirements of our motor vehicle financial responsibility law. See G. L. c. 90, § 34A, cited in note 1, *supra.* See also *United States Fid. & Guar. Co.* v. *Hanover Ins. Co.* 417 Mass. at 659-660 ("No legislative purpose is subverted by preferring the Hanover super-escape clause since coverage is afforded under some policy in an amount at least equal . . . to what is required by the motor vehicle financial responsibility law. The purpose of the law — the protection of the traveling public and victims of motor vehicle accidents — is not compromised or affected. . . . It cannot be argued convincingly that a clause in a garage policy like Hanover's violates public policy"). Questions regarding the practical consequences of insurance policies that have already met the statutory requirements, including questions as to the effect of exclusions on premiums charged, "call for access to information and for specialized expertness that belong to the Commissioner of Insurance, who has the authority to approve forms of policy." *Hahn* v. *Berkshire Mut. Ins. Co.,* 28 Mass. App. Ct. 181, 185 (1989). Given this, the policy considerations now urged upon us by Arbella are beyond our purview.

For the foregoing reasons, we discern no error in the judge's

---

[5]See *United States Fid. & Guar. Co.* v. *Hanover Ins. Co.,* 417 Mass. at 659 ("The express terms of the . . . policy . . . effectuate the intent of limiting the coverage provided to customers based on the realities of a garage operation"). The Appleman treatise relied upon by the court, *id.* at 655 & 660 n.7, makes a sharp public policy distinction between garage policies with super-escape clauses and rental car agency policies with super-escape clauses. Appleman, Insurance Law & Practice § 4906, at 351-352 (rev. ed. 1981) ("So far as garages are concerned, therefore, we may say that escape clauses do not violate public policy; so far as automobile rental agencies are involved, they should not be sanctioned").

decision that Massachusetts law is applicable to determine the rights and duties of the parties as to the contested issue.

*Judgment affirmed.*