van Gestel, Allan, J.
This matter is before the Court on cross motions for partial summary judgment: Defendants’ Motion for Partial Summary Judgment, Paper #16; and Plaintiff/Defendant-in Counterclaim OneBeacon America Insurance Company’s Motion for Partial Summary Judgment Regarding Choice of Law, Paper #22. The issue involved in both motions is whether the substantive law of Massachusetts or of Rhode Island applies to certain insurance policies in issue.

BACKGROUND

OneBeacon America Insurance Company (“OneB-eacon”) is the successor by way of change of name to Employers Commercial Union Insurance Company (“Employers”) and Commercial Union Insurance Company (“CU”). OneBeacon is a Massachusetts corporation with a principal place of business in Boston, Massachusetts.
Narragansett Electric Company (“NEC”) is a Rhode Island public utility with a principal place of business in Providence, Rhode Island. NEC is the successor to Blackstone Valley Electric Co. (“BVEC”) and Blackstone Valley Gas & Electric Co. (“BVG&E”), which were also Rhode Island utilities.
Massachusetts Electric Company (“MEC”) is a Massachusetts public utility with a principal place of business in Northborough, Massachusetts. MEC is a successor to Eastern Edison Co., formerly Brockton Edison Co.
National Grid USA (“NG”) is a Delaware corporation with its principal place of business in Westborough, Massachusetts. NG is a registered holding company and has no operations. NG is a successor to Eastern Utilities Associate (“EUA”), a Massachusetts voluntary trust in which BVEC, Brockton Edison (“Brockton”), and other retail operating companies were affiliated companies.[1]
What is involved is insurance coverage for environmental liabilities at different sites, primarily in Rhode Island. The sites are all associated with historic manufactured gas operations that existed from the mid-1800s until being supplanted in the 1950s by natural gas. The details of the operations and how they may have contributed to environmental contamination is not significant for purposes of the present cross motions.
There are nine sites with live coverage claims or notices. Eight of the nine are wholly located in Rhode Island, with three in Cumberland, two in Woonsocket, two in Pawtucket, and one in Central Falls. The ninth site spans the State border being partly in Massachusetts, in Attleboro, and partly in Rhode Island, in Cumberland. The relevant insured on all nine sites is NEC, formerly BVEC.
OneBeacon’s predecessors, Employers and CU, issued a series of 13 general liability insurance policies (the “Policies”), to the defendants’ predecessors and others, for consecutive, annual policy periods running from October 1972 through October 1985. The Policies promise broad, long-tail coverage for property damage liabilities, unless otherwise expressly limited or excluded. Again, the nature of the coverage is not in issue on the present motions.
Each of the Policies identifies BVEC, and each of the other EUA companies covered by that Policy, as a separate named insured. For example, the first Policy, issued by Employers and covering the period from October 1, 1972 to October 1, 1973, lists the named insureds as:
Eastern Utilities Associates, EUA Service Corporation, Brockton Edison Company, Blackstone Valley Electric Company &/or any Subsidiary, Associated, Allied or Affiliated Company which is Majority owned and now existing or which may hereafter appear. P.O. Box 2333, Boston, Massachusetts.
The Policies’ premiums were rated and calculated on a company-by-company and State-by-State basis. As a result BVEC and its Rhode Island operations were allocated different premiums from Brockton Edison and its Massachusetts operations. This was significant because under Federal and State laws applicable to the utility industry, a local utility is answerable to the ratepayers that it serves within its local market and to the applicable State public utility commission. *2 Thus, costs for operating a Rhode Island utility cannot properly be charged to Massachusetts ratepayers and vice versa.
Each operating company was separately billed for its share of the premiums, and each operating company separately paid its share of the premiums.
The Policies are, and were, separate annual contracts, with coverage obligations running from the insuror to each named insured for its respective needs and operations. The Policies included the following specific language: “The insurance afforded applies separately to each insured against whom claim is made or suit is brought, except with respect to the limits of the company’s liability.”
Each Policy contains pollution exclusion language providing, among other things, that the policy in question does not apply to property damage caused by pollutants unless the “discharge, dispersal, release or escape is sudden and accidental” (Emphasis added.) The rub comes, and the reason for the current cross motions battle, is that the high courts of Rhode Island and Massachusetts are not in agreement as to the interpretation of the “sudden and accidental” exception to the pollution exclusion contained in the Policies. See, e.g., Textron v. Aetna Cas. and Sur. Co., 754 A.2d 742, 749-50 (R.I. 2000), and Lumbermens Mutual Cos. Co. v. Belleville Industries, Inc., 407 Mass. 675, 679-81 (1990).
There is no dispute that the Policies were issued in Boston, by a Boston-based carrier, to the insureds through their Boston-based agent, OBrion Russell. Nor is there any dispute that OBrion Russell, in supporting the insurance program to the insureds, issued an analysis that stated, among other things.
We also wish to stress the advantages in placing all of your Casualty Insurance with one insurance carrier. Not only does this create obvious leverage in your favor by virtue of the greater premium volume but attains uniformity of coverage and limits. Further this avoids any possible conflict between different Insurance Companies in determining which coverage is applicable in one occurrence that could conceivably involve employees, third party Premises-Operations and Automobile Bodily Injuiy and Property Damage Liability.
While the parties’ filings in support of and in opposition to the cross motions are massive, approximating about 11 inches in densely worded girth, the foregoing seems adequate to set the stage for this Court’s analysis of the motions.

DISCUSSION

Rule 56(c) of the Massachusetts Rules of Civil Procedure, 365 Mass. 824 (1974), provides that summary judgment is appropriate “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” We view the evidence in the light most favorable to the nonmov-ing party. See BayBank v. Bornhofft, 427 Mass. 571, 573 (1998).
Vittands v. Sudduth, 49 Mass.App.Ct. 401, 405-06 (2000). See also Allmerica Financial Corporation v. Certain Underwriters at Lloyds, London, SJC #09834 (August 6, 2007).
Thus, summary judgment is granted where, viewing the evidence in the light most favorable to the non-moving party, there are no issues of genuine material fact, and the moving party is entitled to judgment as a matter of law. Cabot Corporation v. AVX Corporation, 448 Mass. 629, 636-37 (2007); Hakim v. Massachusetts Insurers’ Insolvency Fund, 424 Mass. 275, 281 (1997); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). “(T]he moving party must establish that there are no genuine issues of material fact, and that the non-moving party has no reasonable expectation of proving an essential element of its case.” Miller v. Mooney, 431 Mass. 57, 60 (2000). See also Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
While we examine the record in its light most favorable to the nonmoving party, Foster v. Group Health, Inc., 444 Mass. 668, 672 (2005), “(c]onclus-ory statements, general denials, and factual allegations not based on personal knowledge [are] insufficient to avoid summary judgment” (citations omitted). Cullen Enters., Inc. v. Massachusetts Prop. Ins. Underwriting Ass’n, 399 Mass. 886, 890 (1987). “If the opposing party fails properly to present specific facts establishing a genuine, triable issue, summary judgment should be granted.” Id.
O’Rourke v. Hunter, 446 Mass. 814, 821-22 (2006).
“ ‘[T]he party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates . . . that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.’ Wheatley v. American Tel & Tel. Co., 418 Mass. 394, 397 (1994), quoting Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1994).” Symmons v. O’Keefe, 419 Mass. 288, 293 (1995). See also DiPietro v. Sipex Corp., 69 Mass.App.Ct. 29, 36 (2007).
Here, of course, it is not really that the facts are in any kind of significant dispute. Rather, it is the law that the parties are in combat over. Thus, the Court’s analysis will focus on which side is entitled to judgment as a matter of law on the issue of what substantive law applies, that of Rhode Island or that of Massachusetts. This is a choice-of-law analysis.
Both sides agree that the Massachusetts choice-of-law regime controls and that, in insurance cases, *3 Massachusetts applies the functional, two-part test set forth in Section 193 of the Restatement (Second) of Conflict of Laws (1971). Clarendon National Insurance Company v. Arbella Mutual Insurance Company, 60 Mass.App.Ct. 492, 496 (2004). “(T]he first step is to ascertain whether the provisions of sec. 193 will resolve the matter; if not, the next step is to employ the principles set forth in sec. 188 to ascertain which State has a more significant relationship to the issues, using in that analysis the factors set forth in sec. 6.” Id.
The SJC has decided
not to tie Massachusetts conflicts law to any specific choice-of-law doctrine, but seek[s] instead a functional choice-of law approach that responds to the interests of the parties, the States involved, and the interstate system as a whole. Having surveyed the academic commentary and recent decisional law, [the SJC] agree [s] with Professor Leflar’s perception that, despite the rhetoric of choice-of-law scholars, the courts and commentators “are arriving at results broadly consistent with each other’s holdings.” . . .
We, therefore, determine the choice-of-law question by assessing various choice-influencing considerations. It is, of course, obvious that, when courts turn to such considerations, they undertake to reach a fair result in a given case but may provide little guidance for anticipating the “fair result” in other cases. By considering a variety of factors and not simply, as some have argued, choosing the State with the greatest “interest” in the particular issue, some vagueness in the formulations applied is probably inevitable . . . Our approach, however, while producing less predictability, rejects artificial constructions. This, after all, was the primary reason for rejecting the traditional lex loci approach in favor of more modem methods. It makes little sense to reject one artificial approach only to replace it with another.
Bushkin Associates, Inc. v. Raytheon Co., 393 Mass. 622, 631-32 (1985).
As in Clarendon, 60 Mass.App.Ct. at 497, because this Court “cannot locate the risk principally in one State and the [OneBeacon] policy contains a provision [read one way] in Rhode Island but [a different way] in Massachusetts, the principles set forth in sec. 193 do not settle the question of which State’s law to apply to the matter at hand.” Hence, this Court must “assess which State has the most significant relationship to the issue by employing the factors indicated in sec. 188 and sec. 6.” Id.
It seems clear that the justified expectations of NEC, formerly BVEC, is that the insurance provided in the Policies it purchased would provide the broadest coverage for the kinds of pollution events in issue, and would not be excluded by a more cramped reading of the pollution exclusion. In short, the Rhode Island interpretation of “sudden and accidental” seems preferable.
Rhode Island, of course, has a strong interest in protecting its communities and citizens from losses caused by environmental contamination, and in seeing to it that its utilities are covered as best they can be for any unfortunate environmental consequences imposed upon those utilities for events that may well turn out to have occurred long before the successor entities even existed. Massachusetts, while perhaps not wholly indifferent to the fate of Rhode Island’s citizens or the economic well being of Rhode Island’s utilities, has vastly and quite apparently far less interest therein.
Restatement, sec. 6 contains an inexhaustive list of factors for a Court to consider. Included are: (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested States and the relative interest of those States in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainly, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied. To this Court, Rhode Island’s interest are paramount.
All nine of the sites in issue have their situs in Rhode Island. Only one of the nine has any part in Massachusetts. But even as to the latter, it is NEC, the Rhode Island utility, that may have the responsibility for the environmental contamination. Thus, Rhode Island ratepayers have potential economic interest at stake in all nine sites. Massachusetts ratepayers, at most, are limited to a part of only one site, assuming they pay their rates to the Rhode Island utility that may serve them in Attleboro.
OneBeacon leans heavily on the Massachusetts connection to the Policies’ issuance, acquisition, administration and related matters, including the fact that the insureds’ broker, OBrion Russell, was Boston-based. However, “the place of negotiating and the place of contracting are the least significant” considerations in a choice-of-law analysis, and it “is not the case in Massachusetts” that the place of negotiation serves “as an important legal consideration in determining the law to be applied.” Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 188 F.Sup.2d 115, 120-21 (D.Mass. 2002).

ORDER

For the foregoing reasons, the Defendants’ Motion for Partial Summary Judgment, Paper #16, is ALLOWED, and the Plaintii7/Defendant-in-Counterclaim OneBeacon America Insurance Company’s Motion for Partial Summary Judgment Regarding Choice of Law, Paper #22, is DENIED. When final judgment is entered in this case it shall include a declaration to the effect *4 that the substantive law of Rhode Island governs the parties’ dispute in this action, and that because there is no live or justiciable controversy between OneB-eacon and either MEC or NG the complaint shall be dismissed as to them.

The other affiliated companies are Eastern Utilities Service Corporation (“EUA Service’’); Fall River Electric Light Company (“Fall River”); and Montaup Electric Company (“Montaup”). These entities are all based in Massachusetts.