Gants, Ralph D., J.
The plaintiff General Electric Company (“GE”) filed this action in July 2006 against the Joint Liquidators of Electric Mutual Liability Insurance Company, Ltd. (“EMLICO”) seeking a declaration from this Court that the Joint Liquidators have a duty to defend and indemnify GE under the various *320 comprehensive general liability insurance policies issued by EMLICO to GE between 1959 and 1967 for more than a hundred different environmental claims. EMLICO was a Massachusetts mutual insurer, controlled and primarily owned by GE, created to service the insurance needs of GE. In 1995, EMLICO transferred its corporate presence from Massachusetts to Bermuda and, shortly thereafter, declared itself insolvent. The intervenor-defendant OneBeacon America Insurance Company (“OneBeacon”), formerly known as Commercial Union Insurance Company, was a reinsurer of the EMLICO policies under which GE seeks coverage, and is entitled under its reinsurance agreements to interpose defenses to coverage on EMLICO’s behalf. For all practical purposes, given the enormous amount of money sought by GE to reimburse it for the costs expended on these many environmental claims and the limited amount of money available to the Joint Liquidators, OneBeacon is the primary defendant in this litigation, since only OneB-eacon has pockets deep enough to pay these claims.
During the period in question, as noted, EMLICO was a Massachusetts mutual insurer, headquartered in Massachusetts, while GE was a New York corporation, headquartered in New York. The insurance policies between GE and EMLICO were silent as to which state’s law should govern any disputes between GE and EMLICO. GE contends that Massachusetts law should govern; OneBeacon contends that New York law should. The choice of law has more than intellectual interest, since Massachusetts and New York differ in at least two ways that may be of considerable importance in adjudicating this coverage dispute. First, under Massachusetts law, if the policyholder provides late notice of a claim, the insurer, in order to prevail on a defense of late notice, must prove both that the tardy notice was in breach of the notice provision of the policy and that the breach resulted in actual prejudice. Johnson Controls, Inc. v. Bowes, 381 Mass. 278, 282 (1980); Darcy v. Hartford Ins. Co., 407 Mass. 481, 485 (1990). Under New York law, the insurer may prevail on its defense of late notice simply by proving that the tardy notice was in breach of the notice provision of the policy; it need not also prove actual prejudice. In re Brandon & Nationwide Mut. Ins. Co., 97 N.Y.2d 491, 496 n.3 (N.Y. 2002).
Second, under Massachusetts law, if a policyholder proves that he is covered for a loss under one of multiple insurance policies issued over many years, the policyholder may obtain coverage from that single insurer for the full amount of the claim, subject only to policy limits. Rubenstein v. Royal Ins. Co., 44 Mass.App.Ct. 842 (1998). In contrast, under New York law, in what is known as the “pro rata” approach, the policyholder can obtain only that insurer’s pro rata share of the liability, determined on the basis of the amount of time the insurer was on the risk. Consolidated Edison Co. of New York, Inc. v. Allstate Ins. Co., 98 N.Y.2d 208 (2002). Therefore, in Consolidated Edison, where the costs of remediation of the environmental problem were paid over a fifty-year period, the policyholder’s recovery against an insurer who provided coverage for only one of those fifty years was limited to two percent of the total remediation costs. Id. at 216-17. In effect, in New York, the policyholder bears the risk of insolvency or gaps in coverage; in Massachusetts, the insurer bears those risks.
GE and OneBeacon have cross claimed for partial summary judgment, essentially asking this Court to resolve the choice of law that may be determinative of these two legal issues. After hearing, for the reasons detailed below, this Court finds that New York law governs the resolution of these issues.
DISCUSSION
In resolving a dispute regarding choice of law, this Court must use “the conflict-of-laws rules of Massachusetts, the forum State, in order to determine which State’s law is applicable.” Clarendon National Insurance Company v. Arbella Mutual Insurance Company, 60 Mass.App.Ct. 492, 495 (2004). In making that determination, the Appeals Court provides the following guidance:
Massachusetts has adopted a functional choice-of-law approach. Bushkin Assocs., Inc. v. Raytheon Co., 393 Mass. 622, 631 (1985) (“[We] seek instead a functional choice-of-law approach that responds to the interests of the parties, the States involved, and the interstate system as a whole”). The Massachusetts functional approach is explicitly guided by the Restatement (Second) of Conflict of Laws (1971). Bushkin Assocs., Inc. v. Raytheon Co., 393 Mass. at 632. Cosme v. Whitin Mach Works, Inc., 417 Mass. 643, 646 (1994). Kahn v. Royal Ins. Co., 429 Mass. 572, 576 (1999).
Three sections of the Restatement (Second) of Conflict of Laws (1971) are relevant to our analysis: section 193, which sets forth choice of law principles applicable to disputes concerning insurance contracts; section 188, which sets forth principles pertinent to disputes involving questions of contract; and section 6, which is a general statement of principles underlying all rules regarding choice of law. The Restatement is structured such that, when faced, as here, with a conflict of laws question involving insurance contracts, the first step is to ascertain whether the provisions of §193 will resolve the matter; if not, the next step is to employ the principles set forth in §188 to ascertain which State has a more significant relationship to the issues, using in that analysis the factors set forth in §6.
Clarendon National Insurance Company, 60 Mass.App.Ct. at 495-96.
Applying the steps of that analysis, this Court first looks to section 193 of the Restatement, which governs choice of law issues involving liability insurance contracts. “Section 193 provides that the rights created by a contract of casualty insurance are to be determined by the local law of the State that the parties to *321 the insurance contract understood would be the principal location of the insured risk during the term of the policy, unless some other State has a more significant relationship under the principles of §6.” Id. at 496. “The location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law provided that the risk can be located, at least principally, in a single state.” Restatement (Second) of Conflict of Laws §193, comment b. The insured risks during the many years that GE was insured by EMLICO were nationwide in scope, since all of GE’s national operations were insured through EMLICO. No single state can be said to be the “primary location of the insured risk" since no state held more than 20 percent of GE’s operations. However, if one had to choose the primary location of GE during the period in question, one would surely choose New York, which was GE’s legal domicile, its headquarters, and housed more of its operations than any other state, including Massachusetts. Indeed, the Restatement observed that, generally, the insured risk will be located in the state where the policyholder is domiciled. Restatement (Second) of Conflict of Laws §193, comment b. “The state of the insurer’s incorporation and principal place of business is unlikely to have this status unless, for some reason, a substantial number of the contacts mentioned above are grouped within it.” Id. Consequently, while this Court does not find section 193 to be determinative here as to choice of law, the guidance provided by section 193 points in the direction of New York rather than Massachusetts because New York is home to the plurality of the insured risk and is the policyholder’s domicile, which is more consequential than the insurer’s domicile.
Before leaving the realm of choice of law governing insurance contracts, it is important to consider another factor, not specifically addressed in the Restatement but specifically addressed by Massachusetts appellate courts, important to the choice of law in insurance contracts — the need for a uniform and practical interpretation of the comprehensive general liability policies held by a large corporation with nationwide operations. In W.R. Grace & Co. v. Hartford Accident & Indemnity Co., which involved a coverage dispute regarding various personal injury claims for asbestos-related injuries between what the Supreme Judicial Court described as “a large number of insurance companies and a New York-based conglomerate,” the Court opined that “to obtain uniform and practical coverage nationwide for a multi-State corporation such as Grace, it is desirable that the law of one State govern the interpretation of all Grace’s comprehensive general liability insurance policies.” 407 Mass. 572, 585 (1990). The Court explained:
Whether there is a valid underlying asbestos-related claim against Grace in a particular circumstance will be determined by the applicable law in the forum where that claim is made. Whether, however, there is a duty to defend or to indemnify under a nationwide comprehensive general liability policy as to such a claim should not depend on the law of the jurisdiction governing that particular claim but rather should be determined by the law governing the interpretation of the insurance policy and its issuance. Such a result produces coherent interstate insurance coverage; appears to conform to justified expectations; offers the prospect of certainty, predictability, and uniformity of result; provides relative ease in the determination and application of the governing law; and looks to the law of the State which, as to the legal issues involved, has the most significant relationship with the transaction and the parties.
Id. at 585-86, citing Bushkin Assocs., 393 Mass. at 631-34. In effect, the Supreme Judicial Court has recognized that, when there is a dispute among the large corporate policyholder and its various liability insurers as to who, if anyone, must cover a liability claim, it is necessary that the law of a single state govern the entirety of the coverage dispute in order for the dispute to be sensibly resolved. Although the Supreme Judicial Court in W.R. Grace & Co. did not elaborate upon the consequences of this principle, it pragmatically leads to the domicile of the policyholder generally being the choice of law state because that is the only state which all the policies are certain to have in common. It strongly suggests that the domicile of the insurer, if it differed from that of the policyholder, would not be the choice of law state because each insurer may have a different domicile.
This principle was so powerful in another W.R. Grace Co. coverage dispute, this one involving the Woburn environmental claims made famous by the book and movie Civil Action that New York law was found to govern that dispute even though the entirely of the underlying claim was located in Massachusetts. See W.R. Grace & Co. v. Maryland Casualty Co., 33 Mass.App.Ct. 358, 360-62 (1992). The Appeals Court found that New York should govern the substantive law issues in that dispute because Grace was domiciled in New York, Grace’s insurance broker was domiciled in New York, and each of the defendant insurers, although not domiciled in New York, did business in New York. Id. at 362.
When, as here, the first step is not conclusive as to choice of law, the second step “is to employ the principles set forth in §188 [of the Restatement (Second) of Conflict of Laws] to ascertain which State has a more significant relationship to the issues, using in that analysis the factors set forth in §6.” Clarendon National Insurance Company, 60 Mass.App.Ct. at 496. The analysis to be used in this second step was set forth by the Supreme Judicial Court in Bushkin:
The principles contained in §186 and §187 provide that, in the absence of a choice of law by the parties, their rights “are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the *322 parties under the principles stated in §6.” Id. at §188(1). “(T]he contacts to be taken into account in applying the principles of §6 to determine the law applicable to an issue include: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.” Id. at § 188(2). Factors under §6 that are said to be relevant to the choice of the applicable rule of law include: “(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.” Id. at §6(2).
Bushkin, 393 Mass. at 632.
The Supreme Judicial Court in Bushkin warned, “We do not view the process, intended under § 188, for determining the State with the most significant relationship to the issue as simply adding up various contacts.” Id. Here, as in Bushkin, “the contacts analyzed by themselves (without regard to §6 principles) lead us neither to Massachusetts nor to New York as the State with the more significant relationship to the transaction or the parties.” Id. at 634. The place of contracting and negotiation is difficult to ascertain since there was continual communication, both written and oral, between GE in New York and EMLICO in Massachusetts, but only occasional visits. This is not a contract that was negotiated in a particular conference room or signed at a closing. The liability policy was nationwide in scope so it is impossible to identify any single state as the place of performance or the location of the subject matter of the contract. As discussed before, GE and EMLICO have different domiciles and places of business, GE in New York and EMLICO in Massachusetts, so this factor, too, is a wash.
When one looks to “the choice-influencing factors listed in §6(2) of the Restatement (Second) of Conflict of Laws,” id., New York emerges as the state whose law should govern. This Court shall examine each factor individually.
(a)The needs of the interstate and international systems
The Restatement commentary explains that this factor focuses on the need “to further harmonious relations between states and to facilitate commercial intercourse between them . . . Adoption of the same choice-of-law rules by many states will further the needs of the interstate and international systems and likewise the values of certainty, predictability and uniformity of result.” Restatement (Second) of Conflict of Laws §6, comment d. Pragmatically, with insurance coverage disputes, harmony among states and nations could be achieved if the choice of law were determined either by the domicile of the policyholder or of the insurer, since these would provide clear rules of thumb that would not give the appearance of favoring or disfavoring the laws of particular states or nations. However, as noted above, since so many coverage disputes involve a single policyholder battling with various insurers over coverage, the benefits of “certainty, predictability and uniformity” favored by the Restatement would only be achieved if the domicile of the policyholder was the predominant factor in determining the choice of law. This rule of thumb has the additional benefit that, if the insurer wishes to change it, it can include language in its policy that clearly establishes the domicile state of the insurer (or another state) as the choice of law state, thereby obviating the need for any complex choice of law analysis.
(b)The relevant policies of the forum
This Court knows of no relevant policy of the forum state — Massachusetts—that should dictate the choice of law. To be sure, Massachusetts has an interest in ensuring that land spoiled by contaminants be cleaned up, but there is no suggestion in this case that the choice of law will affect the degree to which these environmental problems are cured. Rather, the issue in this case is who will pay for those clean-up efforts, not whether those efforts will be made.
(c) The relevant policies of other interested states and the relative interests of those states in the determination of the particular issue
Other states surely share Massachusetts’ interest in cleaning up their contaminated land but that interest does not bear on whose law will govern the issue of who must pay for that clean-up.
(d) The protection of justified expectations
This factor ultimately proved dispositive in Bushkin and generally will serve as the “tie-breaker” when other factors are balanced. “Where relevant contacts and considerations are balanced, or nearly so, we are inclined to resolve the choice by choosing that law ‘which would cany out and validate the transaction in accordance with intention, in preference to a law that would tend to defeat it.’ ” Bushkin, 393 Mass. at 636, quoting Boston Safe Deposit & Trust Co. v. Paris, 15 Mass.App.Ct. 686, 691 (1983). In Bushkin, aNew York broker entered into an oral agreement with Raytheon, a Massachusetts corporation, in which Raytheon agreed that, if Raytheon acquired the company the broker was discussing, it would pay the broker one percent of the value of the transaction. Bushkin, 393 Mass. at 624-25. The alleged oral fee agreement would be barred by the New York Statute of Frauds, but not by the Massachusetts Statute of Frauds, so the choice of law was determinative of the outcome of the case. The Supreme Judicial Court, finding the other Restatement factors to be balanced, determined that both parties, when they entered the oral agreement, expected that it would be *323 enforced, and that expectation could be protected only if Massachusetts law were chosen, so Massachusetts law was deemed to govern. Id. at 635-36.
While this factor proved dispositive in Bushkin, it is not here. Regardless of whether New York or Massachusetts law governs this dispute, the insurance contract will be deemed enforceable. When GE and EMLICO executed the insurance contracts in question, bothMassachusetts and New York law allowed an insurer to refuse to pay a late-filed claim even if the insurer was not prejudiced by the tardiness. Therefore, neither parly reasonably could have expected that late-filed claims would be paid. It is probably for this very reason that the parties replaced the “standard form” provision requiring notice as soon as practicable after anyone connected with the policyholder had knowledge of the occurrence with the provision that notice must be given only when GE’s Insurance Service had knowledge of the occurrence. Since GE’s Insurance Service would be unlikely to delay notice of an occurrence, this change significantly diminished GE’s risk of a late-filed claim. While this change reflects the mutual desire of GE and EMLICO to avoid the risk of late-filed claims, it does not shed light as to the expectation of the parties as to what should happen if the Insurance Service was late in filing a claim. Indeed, if anything, one can infer that the parties expected that tardy filing would provide a viable defense to payment of the claim, since that was the law in both Massachusetts and New York at the time and the likely motivation for starting the notice clock only when GE’s Insurance Service learned of the claim. Moreover, since one can infer that the parties revised the “standard form” notice provision because they recognized the consequences of a tardy notice of claim, one can infer that they chose the “fix” they did, and did not choose to include a provision in the insurance contract that would bar EMLICO from invoking tardy notice as a defense or require EMLICO to prove prejudice as part of its tardy notice defense.
GE claims that, based on EMLICO’s various assertions that it provided GE with “broad coverage,” the justified expectations of the parties can only be satisfied by applying the broader Massachusetts law. GE, however, reads too much into the language of these assertions. EMLICO may have understood that it was providing broad coverage but it did not promise unlimited coverage. Indeed, the record identifies that GE and EMLICO had a dispute in 1973 over whether the EMLICO policy provided coverage for environmental clean-up costs. The dispute was eventually resolved by GE’s Corporate General Counsel, who determined that clean-up costs were not “damages” within the scope of the insurance policies. Therefore, GE cannot persuasively contend that the parties expected that any dispute over the scope of coverage would be resolved in GE’s favor.
(e)The basic policies underlying the particular field of law
According to the Restatement commentary, “[t]his factor is of particular importance in situations where the policies of the interested states are largely the same but where there are nevertheless minor differences between their relevant local law rules. In such instances, there is good reason for the court to apply the local law of that state which will best achieve the basic policy, or policies, underlying the particular field of law involved." Restatement (Second) of Conflict of Laws §6, comment h. This factor does not apply here, where there are substantive differences between Massachusetts and New York law as to the consequences of a late notice of claim and as to whether an insurer must pay the entirety of the claim or only its pro-rata share. These differences in law are the result of different policy approaches to these issues taken by the appellate courts- in these two states. These fundamental policy differences cannot be bridged or harmonized through the choice of law. Rather, for all practical purposes, the choice of law will dictate whose policies will govern this dispute.
(f)The certainty, predictability and uniformity of result
As discussed earlier, certainty, predictability, and uniformity are best achieved in insurance coverage disputes by using the policyholder’s domicile as the governing state law. The Restatement commentary notes, “Predictability and uniformity of result are of particular importance in areas where the parties are likely to give advance thought to the legal consequences of their transaction.” Restatement (Second) of Conflict of Laws §6, comment i. One such area, plainly, is insurance contracts, where, at least, the insurance company is likely to give advance thought to the legal consequences of choice of law. Moreover, since the insurance company is likely to give far more thought to these consequences than the policyholder, it is fair that the policyholder’s domicile be given great weight in determining choice of law, since the insurer, if it is unhappy with this outcome, can always include a provision in its insurance contract expressly declaring which state’s law should govern any dispute.
(g)Ease in the determination and application of the law to be applied
GE focuses on this factor since it notes, correctly, that Massachusetts law permitting a policyholder to obtain coverage from a single insurer for the full amount of the claim is easier to apply than New York’s “pro rata” approach. However, the Restatement commentary makes it clear that this factor does not focus on the simplicity of applying the underlying substantive state law at issue but only on the ease of applying the law governing the choice of law. The commentary declares:
Ideally, choice-of-law rules should be simple and easy to apply. This policy should not be overemphasized, since it is obviously of greater importance that choice-of-law rules lead to desirable results. The policy does, however, provide a goal for which to strive.
*324 Id. at comment j. As noted before, if the simplicity of choice of law rules is “a goal for which to strive,” the only sensible rule in insurance coverage cases is that the domicile of the policyholder shall govern.
GE argues that the Supreme Judicial Court in Bushkin required this Court to examine the consequences of applying Massachusetts law vs. New York law, and to determine which law would lead to a “fair result” in this case. In support of this proposition, it points to the following language in Bushkin:
We, therefore, determine the choice-of-law question by assessing various choice-influencing considerations. It is, of course, obvious that, when courts turn to such considerations, they undertake to reach a fair result in a given case but may provide little guidance for anticipating the “fair result” in other cases.
Bushkin, 393 Mass. at 631. It is hardly surprising that the Supreme Judicial Court urged lower courts to reach a “fair result”; indeed, it would be extraordinary for our highest court to press for an unfair result. GE, however, contends that, when the Supreme Judicial Court called for a “fair result,” what it really meant was that the court should consider the results produced by applying New York and Massachusetts law, determine which substantive outcome it considered to be more fair, and then declare the state’s law that produced this fairer result to be the governing choice of law. In the context of this case, GE urges this Court to find that the results of applying Massachusetts law to this case — barring a late-noticed claim only if the insurer proves prejudice and rejecting the pro-rata approach — are fairer than if New York law were applied, and therefore declare that Massachusetts law should govern. In other words, to be blunt, GE wants me to decide how I want these issues to be decided, and then choose the law that will produce that result.
This Court doubts that the Supreme Judicial Court in Bushkin intended to suggest this outcome-oriented choice of law formulation. The Supreme Judicial Court in Bushkin did not decide that it wanted the oral broker’s fee agreement in that case to be enforceable and therefore declare that Massachusetts law should govern. Rather, it determined that the parties’ expectation when they entered into the oral agreement was that the agreement would be enforceable and it chose the state whose law would best protect that expectation. Bushkin, 393 Mass. at 635-36. In short, it did not decide whether it preferred Massachusetts law over New York law on this issue, but instead decided that, at the time the parties entered into their oral agreement, they would have preferred Massachusetts over New York law on this issue.
The outcome-oriented formulation proposed by GE, in fact, is contrary to the guidance provided by Bushkin, because the Supreme Judicial Court expressly adopted the choice of law principles in the Restatement (Second) of Conflict of Laws and an outcome-oriented formulation is in conflict with those principles. As discussed, the Restatement provides that, in the absence of the parties’ agreement, the choice of law governing liabiliiy insurance contracts is determined under section 193 by the principal location of the insured risk during the term of the policy, unless another state has a more significant relationship to the transaction and the parties under the principles of §6. See Clarendon National Insurance Company, 60 Mass.App.Ct. at 496. The Restatement does not permit the choice of law to be determined by the outcome of the case that the judge believes most fair. Moreover, the substantive fairness of the ultimate outcome is not among the principles in §6 and would affirmatively conflict with the desire for interstate harmony, certainly, predictability, uniformity of result, and ease of determination that are among those principles. Finally, GE’s outcome-oriented formulation would also tilt choice of law decisions too heavily in the direction of the forum state, whose courts are likely to find their law to be “fairer” than those of other states.[1] As a result, the litigant who flies first in his choice of forum would achieve an unfair advantage in obtaining his choice of law.
This Court finds that New York law should govern this insurance coverage dispute, not because it personally favors New York law over Massachusetts law regarding the two legal issues that will be decided by the choice of law (indeed, it does not), but because the legal principles that govern choice of law, articulated in the Restatement and adopted by Massachusetts appellate courts, when they point to any state, point decidedly to New York State. GE may be unhappy with this choice of law because of the outcome it produces, but it cannot justly complain that the law that governs its insurance disputes is the law of its domicile state. Indeed, here, more than in most insurance disputes, the domicile state of the policyholder has the most significant relationship to the transaction and the parties because the policyholder effectively owns and controls the insurance company. In fact, as noted before, when there was a coverage dispute in 1973, that dispute was definitively resolved, not by a court or arbitrator, but by GE’s general counsel (whose office was in New York).
ORDER
For the reasons stated above, OneBeacon’s motion for partial summary judgment is ALLOWED and GE’s motion for partial summary judgment is DENIED. This Court finds that New York law governs the resolution of the coverage issues in this case.

 In fact, GE’s formulation would place the forum court in a peculiar position if the . forum state is among the states whose law might govern the dispute. If this case had been filed in New York rather than Massachusetts, could the New York trial judge, although sworn to uphold New York law, decide that Massachusetts law should govern because he personally finds our common law to be fairer than New York’s as to the issue in dispute?